STATE OF NEBRASKA, APPELLEE, V. STANLEY R. HUFFMAN,
APPELLANT.
385 N.W.2d 85

Filed April 11, 1986.    No. 85-334.

Gary L. Hogg, Buffalo County Public Defender, and Michael W. Baldwin, for appellant.

Robert M. Spire, Attorney General, and Calvin D. Hansen, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

GRANT, J.

Defendant, Stanley R. Huffman, appeals his conviction, after a jury trial, on two charges of burglary and one charge of aiding in the consummation of a felony. Defendant was found to be a habitual criminal at a hearing held after his conviction. The sentences imposed, as enhanced by the habitual criminal statute, Neb. Rev. Stat. § 29-2221 (Reissue 1979), were 10 to 25

years for each burglary and 10 to 25 years for the felony of aiding in the consummation of a felony. All three sentences were to be served concurrently. Defendant's motion for judgment notwithstanding the verdict or, in the alternative, for a new trial was overruled. Defendant timely appealed to this court.

In defendant's appeal he assigns three errors: (1) The district court "erred in failing to sustain Defendant's motion for a mistrial"; (2) The district court erred "in failing to dismiss all four counts in the information on Defendant's motion to dismiss at the close of the State's evidence and renewed at the close of all evidence by reason of insufficient evidence to support the charges in the information"; and (3) The district court erred "in failing to grant the Defendant's motion for judgment notwithstanding the verdict or in the alternative for a new trial." In connection with these assignments of error, we again state that "generalized and vague assertions do not advise this court of the issues submitted for decision." *Coyle v. Janssen*, 212 Neb. 785, 786, 326 N.W.2d 44, 45 (1982). As stated in *Cook v. Lowe*, 180 Neb. 39, 40, 141 N.W.2d 430, 431 (1966):

> The function of assignments of error is that they set out the issues presented on appeal. They serve to advise the appellee of the question submitted for determination in order that the appellee may know what contentions must be met. They also advise this court of the issues which are submitted for decision.

See, also, *McClellen v. Dobberstein*, 189 Neb. 669, 204 N.W.2d 559 (1973). Nevertheless, because specific points are raised by defendant in his brief in this criminal case and responded to in the State's brief, we dispose of defendant's specific contentions as we see such contentions presented in the briefs. In so doing we are not approving of the method of assigning errors used in this case. For the following reasons we affirm defendant's convictions but remand the cause for resentencing.

On January 15, 1985, an amended information was filed in district court charging defendant with four counts of burglary, one count of aiding in the consummation of a felony, and one count of being a habitual criminal. On March 18, 1985, one of the counts of burglary was dismissed upon the State's motion.

Jury trial was held on March 19 and 20, 1985, on the remaining counts. The jury returned a verdict of not guilty on one of the three remaining counts of burglary, and defendant was convicted of two counts of burglary and one count of aiding in the consummation of a felony.

Defendant was convicted for the September 26, 1984, burglary at Geno's Tavern, Kearney, Nebraska. The record shows the following facts as to that burglary. The proprietor of the tavern, Eugene Schlotman, left the establishment sometime between 10:30 and 11 the night before the burglary. When he left, everything was normal. A security guard checked the tavern doors at 2 a.m. on September 26 and testified that the doors were locked and the building secure. When Schlotman returned at 7 the next morning, he found the front door of the tavern pried open and the back door unlocked. The cash drawer, the loose change kept in the drawer, and some rolled change were missing. The cash drawer was later found by a police detective in a Kearney storm sewer and was identified by Schlotman at the police station. A two-wheel cart was also taken from the tavern, but Schlotman did not know when. The cart was later recovered by the police and identified by Schlotman.

Walter Smith was a self-admitted accomplice of defendant in the crimes charged in the information. In connection with the Geno's Tavern burglary, Smith testified that the two-wheel cart had been taken from the alley behind Geno's Tavern by himself and defendant at an earlier time when they had attempted unsuccessfully to break into the tavern. Smith also testified that defendant pried open the front door to the tavern, entered the tavern, and left through the back door into the alley, where Smith had driven. Defendant was carrying the cash drawer, which contained loose change. Smith entered the tavern to check for cash and rolled change but found only rolled change. Some keys were also taken from the tavern. In his testimony defendant denied any participation in this burglary.

Defendant was also convicted of a burglary at McCue's Grocery on October 18 or 19 of 1984. Myron McCue, the proprietor of the grocery, testified that the store's office was separate from the grocery itself. McCue secured the office

when he left on the evening of the 18th at about 6:30. On the morning of the 19th, McCue arrived at the office at approximately 6:30 and found that the key would not open the door, that the office was in disarray, and that a window was broken out. A safe was missing from the office. The safe and its contents were later identified by McCue at the police station.

In connection with the McCue's Grocery burglary, Smith testified that he and defendant had previously discussed burglarizing McCue's but failed at an earlier attempt to enter the office. At the time of the burglary of which he was convicted, defendant used a pry bar on the window but was unable to open it. Defendant then broke the glass, cranked the window open, and entered through the window. Defendant opened the front door, brought in the two-wheel cart that he and Smith had stolen from Geno's Tavern, and removed the safe to the car trunk. Smith and defendant then took the safe out to Buffalohead sandpit near Kearney and pounded it open. No money was found in the safe. The papers in the safe were scattered about the scene near the sandpit, and the two-wheel cart was thrown in the lake.

Jeffrey Hupp, a detective with the Kearney Police Department, testified and corroborated Smith's testimony as to the physical appearance of the office after the break-in. The safe was missing, and Hupp noticed evidence showing that the safe had been wheeled out. On October 22 Hupp was summoned to the Buffalohead sandpit, where the McCue safe had been found. In connection with this burglary defendant testified he had not participated in any such burglary and that he had spent the evening of October 18 at home sleeping.

Defendant was also convicted of aiding in the consummation of a felony on or about October 20, 1984. The facts show that Walter Smith, the admitted accomplice of defendant in the burglaries, opened a checking account at Platte Valley State Bank and deposited $25 in a new account on a Friday afternoon. Smith then wrote checks at several establishments after the bank had closed. Smith purchased merchandise at one local store, on the date that the account was opened, for approximately $320. Smith testified that both he and defendant knew that the check was insufficiently funded. The next day,

defendant returned some of the merchandise to the store and used the cash receipt to obtain a cash refund. Smith and defendant shared that cash equally between them. That Saturday afternoon, Smith and defendant left the State of Nebraska in defendant's car. Smith and defendant were later arrested in Kingman, Arizona, on Buffalo County warrants, and returned to Kearney. In his testimony in connection with this crime, defendant admitted returning the merchandise for Smith and dividing the money but denied he knew that the check written by Smith was insufficiently funded when given to the store.

Defendant's first assignment of error alleges that the trial court erred in failing to sustain defendant's motion for mistrial made during the direct testimony of Hupp. Hupp testified that he had a conversation with defendant at the time defendant had been returned to Kearney and was in the Buffalo County jail. The following questions were addressed to Hupp on his direct examination by the county attorney:

Q  Did he [defendant] tell you whether or not he'd been involved with the McCue's burglary?

A  He stated he didn't want to talk to me about it.

Q  Did you ask him about Geno's Tavern?

A  Prior to talking to him, I had made mention that I was investigating several burglaries, and I did mention McCues, Geno's, Plaza Wash and Dry, and Goodrich Dairy; those four.

Q  And several other matters?

A  I think mainly I — well, I did take some other theft reports along with me, yes, sir.

Q  Did Mr. Huffman want to talk with you about any of those matters?

A  Not unless a deal could be made.

Defendant's counsel then approached the bench, and the jury was excused. Without making any specific objection to the question, counsel then orally moved the court to declare a mistrial as follows: "I would move the Court to declare a mistrial for the reason that the answer by the witness is a highly statement — it is highly prejudicial and improper and constitutes prejudicial error as far as this defendant is

concerned." The court then denied the motion and, at defendant's counsel's request, orally instructed the jury to disregard the answer.

Defendant premises his assignment of error as to the failure of the trial court to grant his motion for a mistrial on this portion of the trial testimony. It is clear that no specific objections were made to any of the questions directed to the witness Hupp, and the only reason given to the trial court or this court for granting a mistrial was that the statement was "prejudicial and improper." The question is whether the statement was admissible. The statement might well have been prejudicial to defendant's position in the trial. It is obvious that evidence of a full confession by defendant would have been even more prejudicial to his position. Whether a defendant's statement to a police officer is prejudicial is not controlling as to the admissibility of the statement. The officer's answer might well have been nonresponsive to the series of leading questions addressed to him, but no such objections were made. The question of the voluntariness of defendant's statements made to Officer Hupp is not presented to this court. The bill of exceptions does not contain any *Miranda* hearing procedures except a passing reference where a written letter from defendant to Officer Hupp was excluded. No objection was made in the trial court that defendant's statements were not voluntary or were given before appropriate warnings, nor are any such contentions made in this court. In that state of the record, we can only conclude that defendant's statements to the police officer were voluntary and made after proper warnings. In the absence of any objection attacking the voluntariness of the statement or a showing that the statement was obtained in violation of defendant's constitutional rights, the trial court protected those rights more than adequately by instructing the jury to disregard the statement. Defendant's contention that the trial court erred in refusing to grant his motion for mistrial is without merit.

In his second assignment of error, defendant contends that there was insufficient evidence to support his conviction. Under that assignment of error defendant presents contentions as to alleged errors not specifically assigned. He first asserts that the

jury was not properly instructed regarding the close scrutiny that is to be given to the uncorroborated testimony of an accomplice. Defendant raises this point with his attack on the sufficiency of the evidence by alleging that if the jury had been so instructed, it would not have found sufficient evidence to sustain defendant's conviction. Defendant's position rests on his contentions as to the credibility of his alleged accomplice witness. He asserts that testimony should be discounted, thereby making the evidence insufficient for a conviction.

With regard to defendant's contentions concerning the court's instructions, the record does not show that the jury instruction that defendant asserts should have been given was requested. Defendant cannot now complain about incomplete instructions. *State v. Randolph*, 183 Neb. 506, 162 N.W.2d 123 (1968); *Rains v. State*, 173 Neb. 586, 114 N.W.2d 399 (1962). The trial court gave a general instruction on credibility. It may be reversible error for a court to fail or refuse to give an instruction on weight and credibility when requested. *Jungclaus v. State*, 170 Neb. 704, 104 N.W.2d 327 (1960). It is not reversible error for a trial court to fail to give a specific instruction on credibility of the testimony of an accomplice where such an instruction is not requested. Insofar as defendant challenges the sufficiency of the evidence, his main contention is that the testimony of his alleged accomplice is uncorroborated and, therefore, insufficient. This contention is without merit.

First of all, we note that Smith's testimony was corroborated. The testimony of the police officers and the owners of the various premises showed that the physical results in connection with the burglaries showed damages completely consistent with activities described by Smith. Officer Hupp testified that a tennis shoe print found on the safe removed from McCue's Grocery matched a tennis shoe owned by Walter Smith. When defendant was arrested in Arizona, he was wearing a pair of Smith's tennis shoes. Various missing items were found where Smith directed the police. In connection with defendant's obtaining the alleged refund for merchandise purchased by Smith, defendant himself admitted all the pertinent facts except his guilty knowledge.

Secondly, the law in Nebraska does not require

corroboration of an accomplice's testimony. A conviction may rest on the uncorroborated testimony of an accomplice. *State v. Huffman*, 214 Neb. 429, 334 N.W.2d 3 (1983); *State v. Oglesby*, 188 Neb. 211, 195 N.W.2d 754 (1972).

With regard to the specific assignment as to the sufficiency of the evidence, we note that while the record discloses conflicts in the evidence and questions of credibility, it presents sufficient evidence, if believed, to sustain defendant's conviction. We have said many times:

> [I]t is not for this court to accept one version of the case over another . . . . In determining the sufficiency of the evidence to sustain a conviction, it is not the province of this court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. Such matters are for the trier of fact, and the verdict must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support it.

*State v. Warnke*, 221 Neb. 625, 627, 380 N.W.2d 241, 242 (1986), and cases cited therein.

Our examination of the record shows that appellant's claim of insufficiency of the evidence is without merit. We cannot say that defendant's conviction was based upon evidence so lacking in probative force that it was insufficient as a matter of law. *Warnke, supra.*

In defendant's third assignment of error, he asserts that the trial court erred in denying his motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. The specific point argued by defendant is that the State's failure to produce psychological and psychiatric reports of Smith, as ordered by the court, requires a new trial to be granted.

The record on this point is somewhat in confusion. On February 27, 1985, defendant filed a "Motion for Discovery" requesting that the trial court require the State to produce for defendant's inspection and copying "the psychological and psychiatric records concerning State's witness Walter Smith" and to permit defendant's counsel "to review any psychological or psychiatric examinations performed at the request or by the

order of the District Court of Buffalo County, Nebraska, concerning prior criminal cases in the District Court in which Walter Smith was a defendant." On March 5, 1985, the trial court entered an order in which it "sustains Defendant's Motion . . . to inspect records of the prior convictions and evaluations of witness Walter Smith." The record does not disclose what, if anything, was done after this court order.

On April 18, 1985, defendant filed an "Amended Motion . . . for a New Trial." In this motion defendant alleged: "6. The Court erred in refusing to order production of psychiatric records of Walter Smith." The obvious answer to defendant's contention is that the trial court did not refuse to order production, but sustained defendant's motion to inspect some records of Smith's.

The record, however, shows no other action by the court or any counsel after the court's order. In his brief at 17 defendant states: "Defense Counsel believes the reports are crucial to further undermining the credibility of the testimony of Smith. It is believed such psychiatric or psychological records reflect a mental state causing Smith's testimony to be neither credible nor reliable."

With the record before us it is impossible to tell what records were or were not made available to defendant's counsel. We do not in any way rule as to whether Walter Smith's personal medical records need be made available to a third party. We do note that defendant made no motion for a continuance and did not move for any sanctions allowable under Neb. Rev. Stat. § 29-1919 (Reissue 1979) concerning a party's failure to comply with discovery orders. See, *State v. Surber*, 221 Neb. 714, 380 N.W.2d 293 (1986); *State v. Vicars*, 207 Neb. 325, 299 N.W.2d 421 (1980). Defendant's third assignment of error is without merit.

None of defendant's assigned errors have merit, and his conviction on all three counts is affirmed.

While defendant has not assigned error in finding him a habitual criminal and sentencing him as such, we note plain error on the record. *State v. Rodriquez*, 220 Neb. 808, 374 N.W.2d 1 (1985). Neither the transcript nor the bill of exceptions of the enhancement proceeding establishes that the

prior convictions upon which the habitual criminal finding is based were cases in which defendant was represented by counsel. Counsel for the State, in accordance with the requirements of ethical conduct, called this omission to this court's attention. The records of prior convictions of a defendant relied on to establish a finding that defendant is a habitual criminal must show that at the time of the prior convictions defendant was represented by counsel or knowingly, intelligently, and voluntarily waived counsel. *Baldasar v. Illinois*, 446 U.S. 222, 100 S. Ct. 1585, 64 L. Ed. 2d 169 (1980), *reh'g denied* 447 U.S. 930, 100 S. Ct. 3030, 65 L. Ed. 2d 1125; *State v. Smith*, 213 Neb. 446, 329 N.W.2d 564 (1983). While the convictions are affirmed, the cause must be remanded for resentencing.

SENTENCE VACATED AND THE CAUSE
REMANDED FOR RESENTENCING.