STATE OF NEBRASKA, APPELLEE, V.
RICHARD NELSON, APPELLANT.
636 N.W.2d 620

Filed December 7, 2001.    No. S-01-160.

Scott A. Calkins, of Byam & Hoarty, for appellant.

Don Stenberg, Attorney General, and Susan J. Gustafson for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.

## NATURE OF CASE

Richard Nelson was convicted in the district court for Douglas County of unlawful possession with intent to deliver a controlled substance. Nelson was found to be a habitual criminal and was sentenced to imprisonment for a term of 10 to 15 years. Nelson appeals his conviction and his sentencing as a habitual criminal. We affirm the conviction but vacate the sentence and remand the cause for resentencing.

## STATEMENT OF FACTS

Following a bench trial held November 18, 1997, Nelson was found guilty of possession with intent to deliver a controlled substance, cocaine. At trial, Omaha police officer David Turco testified that he was on patrol in a cruiser on January 9, 1997, with his partner, Officer Shawn LeClair, in the vicinity of 33d and Parker Streets in Omaha. Turco had turned the cruiser onto Parker Street heading eastbound when he observed a blue Buick Electra in the eastbound lane of Parker Street parked facing westbound. The Buick pulled away from the curb heading westbound which required Turco to stop the cruiser in order to avoid a collision. After stopping the cruiser, Turco maneuvered around the Buick, which then proceeded westward and turned south on 33d Street. Turco made a U-turn, proceeded south on 33d Street, and saw that the Buick had pulled over to the curb. Nelson got out of the Buick and began to walk eastward. Turco asked Nelson to return to the Buick, and Nelson complied.

Because LeClair recognized Nelson, the officers ran a check of Nelson's record which revealed an outstanding warrant issued

by the sheriff's department. The officers approached the Buick and advised Nelson of the warrant and that he was under arrest. Turco directed Nelson to exit the Buick and handcuffed Nelson after he had exited the vehicle. Turco patted Nelson down to check for weapons. During the pat down, Turco found some candy in Nelson's jacket pocket. Turco then brought Nelson to the cruiser, put him in the back seat, and closed the door. Turco returned to the Buick to assist LeClair with a passenger who was inside the vehicle.

The officers took Nelson to the police station. When they arrived, LeClair escorted Nelson out of the cruiser, and Turco immediately checked the back seat of the cruiser. Turco found a plastic bag containing what was later identified as 9.1 grams of crack cocaine. Nelson was then arrested on a charge of possession with intent to deliver a controlled substance. At the time of the arrest, a pager and $166 in cash, including seven $20 bills, were found in Nelson's possession.

Turco and LeClair testified that they had started their shift approximately 1 hour before the incident with Nelson. They also testified that prior to starting the shift, LeClair had searched the back seat area, and that such searches were routinely made at the start of a shift and after an arrest. LeClair testified that he specifically remembered searching the back seat that day. LeClair typically straps his duty bag into the back seat, and on that day, the seatbelts were buried underneath the back seat cushion, so he had to pull the seat cushion out to retrieve the seatbelts. LeClair testified that the search of the back seat had occurred in daylight at approximately 4 p.m. and that because of the thoroughness of his search, he did not think it possible that he had missed seeing anything in the back seat area. Turco testified that no other passenger had been in the back seat prior to Nelson's arrest and that immediately following Nelson's removal from the cruiser, Turco observed the plastic bag upon inspection of the back seat.

Turco testified that based on his experience, the amount of crack cocaine found in the bag would be characterized as "dealer amounts" rather than "user amounts" because the bag contained approximately 90 hits valued at almost $2,000. Turco further testified that the presence of several $20 bills and a pager on Nelson's person at the time of arrest was significant because

pagers were typically used in narcotics transactions and $20 bills were often used in the trade of crack cocaine, which was commonly sold at $20 per hit.

At the time of Nelson's arrest, swabs were taken of his hands. The swabs were tested by a forensic chemist and tested negative for controlled substances. However, the forensic chemist testified at trial that if an individual had handled a bag containing crack cocaine, residue might be on that individual's hands if residue was on the outside of the bag, but there would not likely be residue on that individual's hands if residue was on only the inside of the bag and none on the outside.

At defense counsel's request, on July 3, 1997, fingerprint tests were performed on the bag found in the cruiser. No identifiable fingerprints were found. The crime laboratory technician who performed the test testified at trial that plastic bags are generally not hard enough to receive fingerprint impressions and noted that it had been almost 6 months between the time the bag had been found in the cruiser and the time it was tested.

Nelson was convicted following a bench trial. On December 9, 1997, an enhancement proceeding was held at which Nelson was found to be a habitual criminal. On June 16, 1998, Nelson was sentenced as a habitual criminal to a term of imprisonment of 10 to 15 years.

On November 22, 1999, Nelson filed a motion for postconviction relief asserting, inter alia, that his counsel had provided ineffective assistance of counsel by failing to perfect a direct appeal of his conviction and sentence. A postconviction evidentiary hearing was held on January 3 and 10, 2001. Thereafter, the district court entered an order finding that Nelson had been provided ineffective assistance of direct appeal counsel and concluding that, pursuant to *State v. McCracken*, 260 Neb. 234, 615 N.W.2d 902 (2000), and *State v. Trotter*, 259 Neb. 212, 609 N.W.2d 33 (2000), the appropriate relief was to grant Nelson a new direct appeal. The present direct appeal followed.

## ASSIGNMENTS OF ERROR

In his new direct appeal, Nelson asserts that (1) the district court erred in finding the evidence sufficient to prove he was a habitual criminal; (2) he was rendered ineffective assistance of

counsel at the enhancement hearing because trial counsel failed to object to the introduction of his prior plea-based convictions and failed to object regarding the sufficiency of the evidence in support of the habitual criminal finding; and (3) the evidence at trial was insufficient to convict him of the charge of possession with intent to deliver a controlled substance, and the district court therefore erred in failing to direct a verdict in his favor.

## STANDARDS OF REVIEW

Regardless of whether the evidence is direct, circumstantial, or a combination thereof, an appellate court, in reviewing a criminal conviction, does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence. Such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Castor, ante* p. 423, 632 N.W.2d 298 (2001). Circumstantial evidence is not inherently less probative than direct evidence. *Id.*

Plain error may be asserted for the first time on appeal or be noted by the appellate court on its own motion. *Jolly v. State,* 252 Neb. 289, 562 N.W.2d 61 (1997); *Law Offices of Ronald J. Palagi v. Dolan,* 251 Neb. 457, 558 N.W.2d 303 (1997); *In re Estate of Morse,* 248 Neb. 896, 540 N.W.2d 131 (1995); *Long v. Hacker,* 246 Neb. 547, 520 N.W.2d 195 (1994); *Humphrey v. Nebraska Public Power Dist.,* 243 Neb. 872, 503 N.W.2d 211 (1993).

## ANALYSIS

*Sufficiency of Evidence—Possession With Intent to Deliver.*

We first consider Nelson's assignment of error with respect to the sufficiency of evidence in the underlying conviction because if such conviction was not valid, the assignments of error regarding sentence enhancement would become moot. Nelson argues that the evidence on the possession charge was almost solely circumstantial. He claims that there was no direct evidence that he was the individual responsible for placing the plastic bag containing crack cocaine in the back seat of the cruiser and that there was evidence which cast substantial doubt on the assertion that he was so responsible.

In reviewing the sufficiency of the evidence following a conviction, we must view the evidence in the light most favorable to the State to determine whether it supports a conviction for possession with intent to deliver a controlled substance. *Castor, supra.* In reviewing the evidence, we must remember that circumstantial evidence is equally probative as direct evidence. *Id.* Therefore, Nelson's complaint that the evidence against him is almost solely circumstantial is not meritorious if such evidence, even though circumstantial, is sufficient to support the conviction.

Turco testified that after he and LeClair had removed Nelson from the back seat, he noticed the bag of crack cocaine under the seat where Nelson had been sitting. LeClair testified that he had searched this area prior to their patrol shift and had not seen a bag at that location at that time. Turco further testified that during the shift, no one had been in the back seat prior to Nelson. Such testimony, if believed by the trier of fact, could reasonably lead to the finding that the bag of crack cocaine had been in Nelson's possession and deposited by him in the back seat of the cruiser.

Turco also testified that the amount of crack cocaine in the bag was a "dealer amount" and that the pager and the $20 bills found on Nelson at the time of his arrest were indications of involvement in narcotics trade. Such testimony supports a finding that Nelson's possession of the crack cocaine was with the intent to deliver it.

Nelson points to evidence in his favor, including the results of tests which failed to detect residue on his hands and which failed to detect his fingerprints on the bag. However, there was also testimony which indicated that residue would not necessarily have been on his hands if he had handled the bag but not the contents and if there had been no residue on the outside of the bag. There was also testimony to the effect that plastic bags do not easily receive fingerprint impressions. The evidence asserted by Nelson therefore does not preclude a finding that he had possessed the bag containing crack cocaine.

Viewing the evidence in the light most favorable to the State, we conclude that, if believed by the trier of fact, there was evidence beyond a reasonable doubt which supports a conviction for possession with intent to deliver a controlled substance.

Nelson's assignment of error regarding sufficiency of the evidence to support his conviction is therefore without merit.

*Habitual Criminal Enhancement.*

The State sought enhancement of Nelson's sentence pursuant to the habitual criminal statute, Neb. Rev. Stat. § 29-2221 (Reissue 1995), based on two prior felony convictions.

Nelson asserts that the district court erred in finding him to be a habitual criminal because the State did not present evidence proving that his prior plea-based convictions were obtained when he either was represented by counsel or had knowingly, intelligently, and voluntarily waived his right to counsel.

■ We have held that in a proceeding for an enhanced penalty, the State has the burden to show that the records of a defendant's prior felony convictions, based on pleas of guilty, affirmatively demonstrate that the defendant was represented by counsel, or that the defendant, having been informed of the right to counsel, voluntarily, intelligently, and knowingly waived that right. *State v. Orduna*, 250 Neb. 602, 550 N.W.2d 356 (1996).

■ The State in this case concedes that the evidence of Nelson's two prior felony convictions presented at the enhancement hearing did not affirmatively establish that Nelson was represented by counsel at the time of his pleas or that he voluntarily, intelligently, and knowingly waived counsel. The State nevertheless argues that such evidence was subject to challenge by Nelson and that Nelson waived the error regarding the sufficiency of the enhancement evidence by failing to object at the enhancement hearing and instead raising the challenge for the first time on appeal. Given the constitutional dimension of the right to counsel, we have held, however, that in the absence of proof on the record that the prior convictions were obtained at a time when the defendant was represented by counsel or had knowingly waived such right, it is plain error for a court to use a defendant's prior convictions to enhance the defendant's sentence. *State v. Ristau*, 245 Neb. 52, 511 N.W.2d 83 (1994); *State v. Huffman*, 222 Neb. 512, 385 N.W.2d 85 (1986).

The State recognizes such authority in its brief, but asserts that such holdings were in error and urges this court to overrule such cases. The State further refers to *State v. McGhee*, 184 Neb.

352, 359, 167 N.W.2d 765, 770 (1969), in which this court held that "the failure of the defendant to initiate inquiry into the constitutional basis of his prior conviction at or prior to its offer into evidence forecloses him from challenging its validity on an appeal to this court." See, similarly, *State v. Cole*, 207 Neb. 318, 298 N.W.2d 776 (1980) (stating in postconviction case that validity of prior conviction offered to enhance punishment under habitual criminal statute must be challenged at habitual criminal hearing and that failure to challenge prior conviction at trial level waives issue, and prior conviction not subject to collateral attack in postconviction proceeding). See, also, *State v. Fowler*, 201 Neb. 647, 271 N.W.2d 341 (1978).

■ We have stated that plain error will be noted only where an error is evident from the record, prejudicially affects a substantial right of a litigant, and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process. *State v. Gutierrez*, 260 Neb. 1008, 620 N.W.2d 738 (2001). We conclude that based on these standards and our prior cases, *Ristau, supra,* and *Huffman, supra,* the use of a defendant's prior convictions to enhance the defendant's sentence absent proof on the record that the prior convictions were obtained at a time when the defendant was represented by counsel or had knowingly waived such right is plain error.

We observe that the holdings in *Ristau* and *Huffman*, decided in 1994 and 1986, respectively, created an exception to the proposition stated earlier in *McGhee*, decided in 1969. Although *McGhee* foreclosed a challenge to the "validity" of a prior conviction on direct appeal when such challenge was not raised at the trial level, we have held in *Ristau* and *Huffman* that in the circumstance in which the challenge to the validity of the prior conviction was limited to the absence of proof on the record in an enhancement hearing—that the prior conviction was obtained at a time when the defendant was represented by counsel or had knowingly waived such right—such error was plain error, meaning that it could be considered on appeal even though it had not been raised at the trial level. *Ristau* and *Huffman* therefore overruled *McGhee* to the extent that under *Ristau* and *Huffman*, such counsel-based challenges will be

permitted on direct appeal, notwithstanding a failure by trial counsel to raise such challenges.

In the present case, the district court committed plain error in sentencing Nelson as a habitual criminal where the State failed at the enhancement hearing to affirmatively establish that Nelson was represented by counsel at the time of the pleas in his two prior felony convictions. See, *State v. Orduna*, 250 Neb. 602, 550 N.W.2d 356 (1996); *State v. Ristau*, 245 Neb. 52, 511 N.W.2d 83 (1994); *State v. Huffman*, 222 Neb. 512, 385 N.W.2d 85 (1986). We therefore vacate Nelson's enhanced sentence and remand the cause to the district court for resentencing. Because of the disposition of this assignment of error, we need not consider Nelson's assignment of error claiming ineffective assistance of counsel at the enhancement hearing.

*Double Jeopardy in Enhancement Proceeding.*

Nelson asserts that in the event of a remand for resentencing, the Double Jeopardy Clauses of the U.S. and Nebraska Constitutions, U.S. Const. Amend. V and Neb. Const. art. I, § 12, prohibit the State from attempting to resentence him as a habitual criminal. Nelson bases his argument on the holding of the Nebraska Court of Appeals in *State v. Gray*, 8 Neb. App. 973, 606 N.W.2d 478 (2000). In *Gray*, the Court of Appeals held that double jeopardy principles apply to habitual criminal proceedings under § 29-2221 and that the State is prohibited from attempting to resentence a defendant as a habitual criminal where the enhanced sentence has been vacated because of insufficient evidence.

The State questions the Court of Appeals' holding in *Gray*. In so arguing, the State cites to this court's holding in *State v. Neiss*, 260 Neb. 691, 619 N.W.2d 222 (2000), and the U.S. Supreme Court's holding in *Monge v. California*, 524 U.S. 721, 118 S. Ct. 2246, 141 L. Ed. 2d 615 (1998). In *Neiss*, we held that double jeopardy principles do not apply to Nebraska's driving under the influence enhancement proceedings. In deciding *Neiss*, we relied in part on the U.S. Supreme Court's decision in *Monge*. In *Monge*, the Court held that in noncapital sentencing proceedings, the Double Jeopardy Clause of the U.S. Constitution does not preclude resentencing enhancement proceedings even where the

enhancement sentencing proceeding has certain hallmarks of a trial. The Court noted that double jeopardy protections are generally inapplicable to sentencing proceedings because the determinations at issue in sentencings do not place a defendant in jeopardy for an "offense." The Court in *Monge* noted, however, that double jeopardy protections do apply to capital sentencing proceedings. We have similarly concluded in *State v. Hochstein and Anderson, ante* p. 311, 632 N.W.2d 273 (2001).

At issue in *Monge* was California's "three-strikes" law, which provides that a defendant convicted of a felony who has two qualifying prior convictions for "serious felonies" shall be sentenced to a minimum prison sentence of 25 years to life, and a defendant convicted of a felony who has one prior serious felony shall be sentenced to a double term of imprisonment. The Court concluded that the Double Jeopardy Clause did not preclude a resentencing hearing, the subject of which would be the merits of allegations regarding the existence of prior serious felony convictions under California's "three-strikes" law.

■ We conclude that the rationale of *Monge* applies to habitual criminal enhancement proceedings under § 29-2221. Habitual criminal proceedings under the Nebraska statutes are similar to proceedings under the California "three-strikes" law at issue in *Monge* in that the determinations made in habitual criminal proceedings are sentencing determinations involving establishing the existence of prior convictions. Such determinations are not trials regarding an element of an offense. *Monge, supra.* We hold that double jeopardy principles do not apply to habitual criminal enhancement proceedings under § 29-2221, and we therefore overrule *State v. Gray,* 8 Neb. App. 973, 606 N.W.2d 478 (2000), to the extent it held that double jeopardy principles applied to habitual criminal enhancement proceedings.

■ Nelson urges us to conclude that even if the U.S. Constitution's Double Jeopardy Clause does not apply to habitual criminal enhancement proceedings, the Nebraska Constitution's double jeopardy clause prohibits the State from attempting to sentence him as a habitual criminal on remand. However, we have held that the protection provided by Nebraska's double jeopardy clause is coextensive with that provided by the U.S. Constitution. *State v. Isham,* 261 Neb. 690, 625 N.W.2d 511 (2001); *Neiss,*

*supra*; *State v. Franco*, 257 Neb. 15, 594 N.W.2d 633 (1999). We, therefore, reject Nelson's argument that the Nebraska Constitution provides greater protection, and we conclude that on remand, neither the U.S. nor the Nebraska Constitution's double jeopardy provisions preclude resentencing Nelson as a habitual criminal.

## CONCLUSION

Following conviction, and viewing the evidence in the light most favorable to the State, we determine the evidence was sufficient to convict Nelson of possession with intent to distribute a controlled substance. We, therefore, affirm Nelson's conviction. However, at the habitual criminal enhancement proceeding, the State did not establish that Nelson's pleas in his two prior felony convictions were counseled or that Nelson had waived counsel. Based on such evidence, we conclude that it was plain error for the district court to find Nelson to be a habitual criminal for sentencing purposes, and the sentence should be vacated. We further conclude that double jeopardy principles do not preclude a subsequent habitual criminal sentencing proceeding upon remand. We, therefore, vacate Nelson's sentence and remand the cause to the district court for resentencing consistent with this opinion.

SENTENCE VACATED, AND CAUSE
REMANDED FOR RESENTENCING.

McCORMACK, J., participating on briefs.