**HEADNOTE:**    *Payton v. State*, No. 2115, September 2016 Term

**JUDICIAL IMPARTIALITY – REOPENING CASE FOR FURTHER EVIDENCE – TRIAL COURT DEPARTED FROM POSITION OF NEUTRALITY BY SUA SPONTE REOPENING THE STATE'S CASE WITH INSTRUCTIONS ON HOW TO AVOID JUDGMENT OF ACQUITTAL.**

Appellant was charged with murder and tried before a jury. After both sides rested, appellant made a motion for acquittal, arguing simply that the State had not proved its case. The trial court, concerned that a palm print had not been sufficiently linked to appellant, *sua sponte* reopened the State's case and stated that the motion for acquittal would be granted unless the State called its forensic expert back to the stand. Two days later, the trial resumed and the forensic expert testified again, clarifying that the palm print belonged to appellant. Appellant was subsequently convicted of first- and second-degree murder, as well as use of a firearm in the commission of a felony, and noted an appeal.

*Held*: Judgments vacated and remanded for new trial. An impartial and disinterested judge is fundamental to a criminal defendant's right to a fair trial, and the court abused its discretion by departing from that neutral role. Despite expressing concern about a perceived defect in the State's case and opining that it could "easily" grant the motion for acquittal, the court *sua sponte* reopened the State's case and gave the State specific instructions on how to avoid a judgment of acquittal.

While there is no *per se* rule that prohibits a court from *sua sponte* reopening a case, such a decision should be made cautiously and with a vigilant eye to ensure that the court does not cross the line of impartiality.

Circuit Court for Baltimore City
Case No. 115224002

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2115

September Term, 2016

BRANDON PAYTON

v.

STATE OF MARYLAND

Beachley,
Shaw Geter,
Moylan, Charles E., Jr.
   (Senior Judge, Specially Assigned),

JJ.

Opinion by Beachley, J.

Filed:  February 1, 2018

After a four-day jury trial in the Circuit Court for Baltimore City, appellant Brandon Payton was convicted of first-degree murder, second-degree murder, and use of a firearm in the commission of a felony. Appellant timely appealed and presents three questions for our review, which we have reordered:

1. Was [a]ppellant deprived of a fair trial when the trial judge departed from a position of neutrality, directing the prosecutor to reopen the case after the State had rested to introduce critical evidence?

2. Is the evidence legally insufficient to sustain [a]ppellant's convictions?

3. Did the trial judge err by permitting Detective Riker to narrate a video recording while it was being played for the jury?

While the evidence was sufficient to sustain appellant's convictions, we hold that the trial court abused its discretion when it departed from a position of neutrality and *sua sponte* reopened the State's case, and remand for a new trial.

## FACTUAL AND PROCEDURAL BACKGROUND

At approximately 6:00 p.m. on June 12, 2015, in West Baltimore, several eyewitnesses watched a man dressed in brightly-colored women's clothing and a floppy hat chase down and shoot another man. The victim, identified as Steven Bass, died from multiple gunshot wounds. The shooter fled into an alley by a nearby liquor store, whose security footage corroborated testimony about an individual wearing a floppy hat and floral blouse in the vicinity of the shooting. Police officers searched the scene and alley, but were unable to recover any bullets, shell casings, or articles of clothing belonging to the shooter. However, they were later able to lift a palm print from the car of a witness who believed the shooter may have touched the hood of his vehicle while passing by. A search

for the print on an automated database returned a "hit," and an arrest warrant for appellant was eventually issued on July 15, 2015.

Appellant was tried in September 2016 before a jury in the Circuit Court for Baltimore City. During the trial, the State introduced testimony from two expert witnesses from the Latent Fingerprint Unit at the Baltimore City Police Department: Sean Dorr and Elizabeth Patti. Mr. Dorr testified that he examined three fingerprint lift cards taken from the witness's vehicle, and found one – a partial latent print – suitable for comparison. That lift card was uploaded to an automated system that compares unknown prints against Maryland's state database of known prints. After examining the results, Mr. Dorr testified from his report that "the partial latent print . . . has been identified as an impression of the left palm of Brandon Payton, SID number 2476078."[1] Mr. Dorr further testified that he personally fingerprinted appellant on August 9, 2016, and that he was able to verify that the prints he took were also linked to SID number 2476078. Mr. Dorr, however, did not compare those August 2016 prints directly to the lift card taken from the witness's vehicle. Ms. Patti testified that she used magnifiers to physically compare the lift card to known prints in the system belonging to appellant. She also verified that the prints Mr. Dorr took from appellant in August 2016 were linked to SID number 2476078.

---

[1] Ms. Patti testified that an SID number (State Identification Number) is unique to an individual, and one person will not have multiple SID numbers. Mr. Dorr later clarified that because juvenile records are uploaded to a separate database, it is possible for one person to have two SID numbers.

When the State rested, appellant made a motion for judgment of acquittal, asserting simply that "the State has not proven its case at this point." Perhaps due to the State's confusing explanation regarding SID numbers,[2] the trial court immediately began to question the State about whether its experts had testified that the unknown print (on the lift card) had ever actually been compared to known prints of appellant. Despite replaying portions of Mr. Dorr's testimony, the State was unable to provide the trial court with a satisfactory explanation. During the following colloquy, the trial court *sua sponte* reopened the State's case and offered the State the opportunity to put on further evidence:

THE COURT: I am more than frustrated. Right this minute I don't think you've made your case. So my question is, do I simply grant the motion to dismiss which I could easily do based on what I have heard of this testimony, because you have not convinced me that your client, that you have put this man at the scene of this crime.

Now, if you want me to allow you to reopen your case to call your expert back in -- and Ms. Zeit [defense counsel] I'm sure is going to object to that -- and ask that question, in your judgment, to a reasonable degree of certainty, is the print that was taken off of that car Mr. Brandon Payton's print, if you want to call your witness back for five minutes of testimony with whatever cross-examination, I am going to permit that, because I think justice needs to be done and I -- generally speaking, I am generally speaking, not inclined to punish clients -- in your case, the public is your client -- for something that a lawyer may or may

---

[2] It appears from the record that the trial court may have confused SID numbers, which are unique to an individual, with transaction numbers, which are attached to prints rather than people. In response to the State's insistence that the prints had all been linked to the same SID number, the trial court responded that "the same SID number frankly doesn't matter. They don't know what an SID number [is] except it's an identifier. . . . The SID number simply associates with a print."

3

not have done. But I don't think you've made your case at this moment. I'm going to permit you to do that.

And Ms. Zeit, you're going to object, I'm assuming?

[DEFENSE]: Absolutely, yes.

THE COURT: Yeah, I thought so, and I don't blame you.

But right this minute, I'm going to let you reopen your case Friday morning for brief testimony to fill in the gap in your case --

[THE STATE]: Yes, Your Honor.

THE COURT: -- because I think you intended to do it and I don't think you did it, and the fact that you can't point to me right now -- I mean, I've listened to what you're talking about here and it is not convincing me at all. I think you got lost in the weeds, quite frankly. And so, I'm going to let you do it, but you know, right this minute, I'm not seeing it. You're not convincing me that you've made your case because you haven't put this man on the scene of the crime. And --

[THE STATE]: Yes, Your Honor.

THE COURT: -- again, if you can't do it on Friday, that's fine, then I will grant the motion.

Two days later, Mr. Dorr was called back to the witness stand and testified that he had examined the palm print from the witness's car, prepared a report identifying the print as belonging to appellant, and that the associated SID number was 2476078. Mr. Dorr also testified that he personally took fingerprints from appellant on August 9, 2016, and that those prints were associated with SID number 2476078. Mr. Dorr explained that whenever a person is fingerprinted, those prints are tested against an automated database of known prints. If the prints are found to have an existing match within the system, they will be

4

associated with the same SID number. Mr. Dorr explained that an individual may have two SID numbers, one for prints taken as a juvenile and one for prints taken as adult, but that appellant was only associated with SID number 2476078.

After the cross-examination of Mr. Dorr, the State rested. Appellant produced no evidence, and the case proceeded with jury instructions and closing arguments. Later that afternoon, the jury found appellant guilty of first-degree murder, second-degree murder, and use of a firearm in the commission of a felony. On December 5, 2016, appellant received a life sentence for first-degree murder and a consecutive twenty-year sentence for use of a firearm in the commission of a felony.[3] Appellant noted this timely appeal.

## DISCUSSION

### I.

### *Trial Court's Reopening of the Case*

Appellant argues that the trial court abandoned its position of impartiality when it declined to rule on the motion for judgment of acquittal, *sua sponte* reopened the State's case-in-chief, and told the State exactly what it needed to do to survive the motion for acquittal. We agree, and hold that the trial court abused its discretion by abandoning its neutral role and *sua sponte* reopening the State's case for further testimony.[4]

---

[3] At sentencing, appellant's conviction for second-degree murder was merged into his first-degree murder conviction.

[4] We reject the State's preservation argument. An appellate court generally will not decide any issue "unless it plainly appears by the record to have been raised in or decided by the trial court[.]" Md. Rule 8-131(a). Here, the trial judge explicitly recognized that reopening the State's case could "very well . . . be grounds for appeal[.]" Appellant's

Generally, trial judges have broad discretion to reopen a case to receive additional evidence, and such decisions will not be overturned on appeal absent an abuse of discretion. *Hunt v. State*, 321 Md. 387, 405 (1990). When the State moves to reopen its case-in-chief to introduce additional evidence, "the judge must consider whether the State deliberately withheld the evidence proffered in order to have it presented at such time as to obtain an unfair advantage by its impact on the trier of facts." *State v. Hepple*, 279 Md. 265, 271 (1977).

The instant case, however, does not involve a trial court granting the State's motion to reopen its case. Instead, the trial court here *sua sponte* reopened the State's case for additional evidence, in a jury trial, based on its belief that the State had not adequately proved its case. While we are not aware of any Maryland case directly on point, we addressed this type of scenario through dicta in *Cason v. State*, 140 Md. App. 379 (2001).

In *Cason*, we held that a trial judge did not abuse his discretion when he *sua sponte* reopened the evidentiary portion of a suppression hearing to admit additional evidence that the prosecution had neglected to introduce during its case-in-chief. *Id*. at 393. In making this decision, we acknowledged that courts have identified some factors which may be

objection to the trial court's action included, among other grounds, that the reopening was "unfair" and "extremely prejudicial." We conclude that appellant properly challenged the trial court's decision on this issue, thereby affording the parties and the trial judge an opportunity to respond to the challenge. *Id*.

considered when assessing a trial court's decision to vary the order of proof in a case, such as:

> Whether good cause is shown; whether the new evidence is significant; whether the jury would be likely to give undue emphasis, prejudicing the party against whom it is offered; whether the evidence is controversial in nature; and, whether the reopening is at the request of the jury or a party.

*Id*. at 391-92 (quoting *Dyson v. State*, 328 Md. 490, 502 (1992)).

Applying some of these factors, we noted that the additional evidence was not new, but merely corroborated and clarified earlier testimony. *Id.* at 392. We also observed that Cason was not denied the opportunity to cross-examine or present rebuttal evidence and further noted that, because the proceeding was before a judge, there was no danger of prejudicing a jury. *Id.* at 392-93.

Because *Cason* involved a suppression hearing with a judge, rather than a jury, acting as a finder of fact, it is distinguishable from the case at bar. Nevertheless, the *Cason* Court reviewed cases which Cason relied upon in arguing that the trial court had "assumed the role of the prosecutor." *Id.* at 393. In distinguishing Cason's case from those he cited, we opined that:

> All but one of the cases that [Cason] relies upon in support of his argument that the suppression hearing judge "assumed the role of prosecutor" in reopening the evidence involved situations in which, after the State failed to produce legally sufficient evidence, the judge reopened the State's case in order to allow the prosecution to cure this defect. These cases are inapposite. The remaining case relied upon by [Cason] involved a trial judge's "suggesting that the prosecutor should impeach [the defendant's] testimony by proof of a prior conviction," and reopening cross examination for him to do so. In those circumstances, it was clear that the trial judge had abandoned his neutral role and had acted as an advocate by assisting the prosecution in the presentation of its case.

*Id. at* 393 (internal citations omitted).

In *Wisneski v. State*, we applied the factors enumerated in *Cason* and held that the trial court did not err in reopening a criminal jury trial for illegal possession of a handgun. 169 Md. App. 527 (2006), *aff'd on other grounds*, 398 Md. 578 (2007). There, the parties stipulated on the record but out of the presence of the jury that the defendant, Wisneski, had been convicted of a crime which made it illegal for him to possess a handgun. *Id.* at 531. After presenting its case, the State rested under the mistaken belief that the stipulation had already been entered into evidence. *Id.* at 532-33. Wisneski moved for acquittal on the basis that the stipulation had not been introduced into evidence. *Id.* at 533. The State responded that it thought the stipulation was already in evidence, and moved to reopen its case in order to place it on the record before the jury. *Id.* The trial court granted the State's motion. *Id.*

We affirmed the trial court's decision, noting that there was no evidence that the State withheld the stipulation for tactical advantage. *Id.* at 555. Moreover, because Wisneski had agreed to the stipulation, the reopening did not impair Wisneski's ability to respond or impede his right to a fair trial. *Id.* We also observed that from the jury's perspective, the stipulation was not presented out of order or unduly highlighted, because the trial court read it to the jury at the close of the State's case. *Id.*

While *Cason* and *Wisneski* provide important guidance in resolving the case at bar, there does not appear to be any Maryland appellate decision addressing the propriety of a trial judge *sua sponte* reopening the State's case for additional evidence to cure a perceived flaw in the prosecution's case. Courts from other states, however, have addressed this

8

issue. In *J.F. v. State*, 718 So. 2d 251 (Fla. Dist. Ct. App. 1998), the court held that the trial court erred when it *sua sponte* reopened the prosecution's case to obtain fingerprint evidence in a juvenile appellant's trial for theft of an automobile. There, the investigating officer testified that he had obtained fingerprints from the stolen automobile but that the test results were not available at the time of trial. *Id*. at 252. After the State and defense rested, the trial judge called the officer back into the courtroom. *Id*. The trial judge then asked the officer when the fingerprint analysis would be available and directed the officer to have the results available within a week. *Id*. Though the prosecution never asked for a continuance nor indicated that it intended to submit fingerprint analysis, the trial judge *sua sponte* continued the case to obtain the fingerprint evidence. *Id*. Approximately one week later, the hearing resumed and, over J.F.'s objection, the trial court admitted incriminating fingerprint evidence against J.F. *Id*. The Florida intermediate appellate court reversed the conviction, noting that "[a] trial judge 'should never assume the role of prosecuting attorney and lend the weight of his great influence to the side of the government[.]'" (quoting *Hunter v. United States*, 62 F.2d 217, 220 (5th Cir. 1932)). In reaching its decision, the Florida appellate court stated,

> Here, the trial court assumed the role of the prosecutor by directing a witness for the state to obtain additional evidence and sua sponte continuing the hearing pending the results when the state never gave any indication that it intended to admit the fingerprint evidence. The judge's actions can easily be seen as giving the state an unrequested second chance to prove its case. Indeed, the trial judge even suggested that he was not convinced beyond a reasonable doubt regarding appellant's guilt until the fingerprint results were admitted into evidence. After finding appellant guilty, he said "I just can't get around the fingerprint."

*Id.; accord Lyles v. State*, 742 So. 2d 842 (Fla. Dist. Ct. App. 1999).

9

Nebraska's intermediate appellate court reached a similar result in *State v. Gray*, 606 N.W.2d 478, 495-97 (Neb. Ct. App. 2000), *overruled on other grounds by State v. Nelson*, 636 N.W.2d 620, 628 (Neb. 2001). In that case, when the State rested, its evidence of Gray's prior convictions was insufficient to prove that Gray was a habitual criminal under Nebraska law. *Id*. at 495. The trial judge informed the State by letter of the evidentiary insufficiency and allowed the State to reopen its case to establish that Gray was a habitual criminal. *Id*. In concluding that the trial judge committed reversible error by "depart[ing] from his role as neutral fact finder[,]" the court stated,

> In the instant case, the court did more than suggest a pleading. Instead, he assessed the State's evidence, found it insufficient, advised the State of the insufficiency, and then over objection allowed the State to put in more evidence to attempt to plug the gaps in its proof. Regardless of the judge's intention, we cannot avoid the conclusion that the judge assisted the State, which compromised his duty to be impartial.

*Id*.; *see also State v. Bol*, 846 N.W.2d 241, 251 (Neb. 2014) (withdrawal of State's rest proper "as long as court does not advocate for or advise State to withdraw its rest").

Other courts have reached a similar conclusion. *State v. Brock*, 940 S.W.2d 577, 580-81 (Tenn. Crim. App. 1996) (holding that trial court abused its discretion in statutory rape prosecution in which defendant's age was an element of the offense by *sua sponte* reopening case, calling defendant back to witness stand, and asking defendant his age after noting that no evidence of defendant's age had been presented); *State v. Finley*, 704 S.W.2d 681, 684 (Mo. Ct. App. 1986) (holding it "improper for the trial judge to assume the prosecutor's role . . . by suggesting that the prosecutor should impeach [defendant's] testimony by proof of prior conviction").

10

We recognize the existence of decisional law to the contrary. *See Lebedun v. Commonwealth*, 501 S.E.2d 427, 436 (Va. Ct. App. 1998) (holding that trial court, in a jury trial, did not abuse its discretion in *sua sponte* raising issue of in-court identification and allowing Commonwealth to reopen its case to establish identification of defendant); *People v. Betts*, 400 N.W.2d 650, 652-53 (Mich. Ct. App. 1986) (holding that, where there were two conflicting versions of the testimony and the trial court did not know which to believe, it was not error in a bench trial for the trial judge to *sua sponte* call a witness that had been listed but that both parties had declined to call); *Commonwealth v. Safka*, 141 A.3d 1239, 1251 (Pa. 2016) (holding that in a non-jury vehicular manslaughter trial, there was no distinction between reopening the case on a party's motion and reopening on the court's own initiative, and that the trial court had discretion to reopen the record *sua sponte* to receive additional testimony concerning the reliability of the vehicle's Event Data Recorder, which recorded the car's speed prior to the airbag's deployment); *State v. Medeiros*, 909 P.2d 579, 588-89 (Haw. Ct. App. 1995) (recognizing that trial court must be impartial when exercising power to call its own witnesses, but holding that in non-jury trial, judge did not behave partially by *sua sponte* calling its own witnesses after both sides rested, noting that testimony was not essential and did not necessarily benefit the State's case). We note, however, that, with the exception of *Lebedun*, all of these cases permitted reopening of the prosecution's case in a bench trial where the trial judge was the factfinder. And while Virginia's intermediate appellate court in *Lebedun* found no error in the court's reopening of the prosecution's case in a jury trial after the trial judge *sua sponte* pointed

11

out that the defendant had not been properly identified, we are not persuaded by that court's limited, and somewhat perfunctory, analysis.

A criminal defendant has the right to a fair trial, and it is well-settled in Maryland that an impartial and disinterested judge is fundamental to this right. *Jackson v. State*, 364 Md. 192, 206 (2001). In other contexts, we have observed that, "Although a conviction is rarely reversed on the grounds that the judge has compromised his or her impartiality by intervening in a case, there have been instances where the egregiousness of a trial court's intervention indeed warranted admonishment of the trial court or, even in some cases, a new trial." *Smith v. State*, 182 Md. App. 444, 483 (2008); *see Archer v. State*, 383 Md. 329, 358-60 (2004) (awarding new trial after holding that trial court abandoned role of impartiality through its efforts to force a witness to testify after that witness refused to do so); *see also Vandegrift v. State*, 237 Md. 305, 310-11 (1965) (granting new trial when trial court's questioning of a witness manifested its disbelief of that witness's testimony).

In the instant case, despite stating that the motion for acquittal could be granted, the trial court declined to rule on the motion as Rule 4-324(b) dictates.[5] Although the State

---

[5] Rule 4-324(b) provides:

**Action by the court.** If the court grants a motion for judgment of acquittal or determines on its own motion that a judgment of acquittal should be granted, it shall enter the judgment or direct the clerk to enter the judgment and to note that it has been entered by direction of the court. The court shall specify each count or degree of an offense to which the judgment of acquittal applies.

made no motion to reopen, the trial court elected to *sua sponte* reopen the case for further testimony, and advised the State on how to avoid a judgment of acquittal.

As noted *supra*, when deciding whether the trial court has abused its discretion in reopening a party's case, relevant factors include: the significance of the additional evidence, whether it is controversial, and whether the jury will be unduly influenced, thereby prejudicing the party against whom it is offered. *Dyson*, 328 Md. at 502. Here, while perhaps not controversial, it was important for the State to establish a clear and explicit link between appellant's known prints and the unknown palm print taken from a witness's car. This evidentiary link was highlighted by Mr. Dorr's testimony, which was presented two days after the State had rested. Because appellant elected not to present any evidence, Mr. Dorr's testimony was the last evidence the jury heard, thereby increasing the danger of the jury placing undue emphasis on that testimony. We therefore hold that, under these circumstances where the trial court was on the precipice of granting an acquittal, the court abused its discretion by abandoning its position of impartiality and *sua sponte* reopening the State's case to correct a perceived defect. We accordingly vacate appellant's convictions and remand for a new trial.

To be clear, the bench and bar should not construe our opinion as a *per se* rule prohibiting the trial court from *sua sponte* reopening the evidence in a jury trial. Such a decision, however, should be made cautiously and with a vigilant eye to ensure that the court does not cross the line of impartiality.

## II.

### *Sufficiency of the Evidence*[6]

We next address appellant's contention that the evidence was not legally sufficient to sustain his convictions. Appellant claims that the State failed to prove that the victim of the shooting was the same person who was autopsied, and argues that the State therefore failed to prove that a crime occurred.

The standard of review for the sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Hobby v. State*, 436 Md. 526, 538 (2014) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "The test is not whether the evidence *should have or probably would have* persuaded the majority of the fact finders but only whether it *possibly could have* persuaded *any* rational fact finder." *Painter v. State*, 157 Md. App. 1, 11 (2004) (citations and internal quotation marks omitted). In applying this test, "[w]e defer to the fact finder's opportunity to assess the credibility of witnesses, weigh the evidence, and resolve conflicts in the evidence." *Neal v. State*, 191 Md. App. 297, 314 (2010) (citations and internal quotation marks omitted).

Here, eyewitnesses testified that an individual dressed in women's clothing used a handgun to shoot the victim multiple times. Detective Jonathan Riker, the lead investigator

---

[6] We address appellant's sufficiency of evidence claim because, if the evidence were legally insufficient, appellant would be entitled to a reversal of his convictions with no remand for retrial.

on the case, identified the victim as Steven Bass, and testified that Mr. Bass died at the scene of the crime. The assistant medical examiner who performed the autopsy of Mr. Bass testified that the manner of death was homicide. Finally, the jury heard evidence that the shooter may have touched an eyewitness's car, and two fingerprint experts testified that a palm print taken from that same vicinity of the eyewitness's car matched prints taken from appellant. Simply put, the evidence was sufficient to sustain appellant's convictions.

### III.

### *Narration of Surveillance Video*

During trial, the State introduced surveillance footage from a nearby liquor store. Detective Riker narrated while the video played, identifying the locations depicted and explaining which way the suspect was traveling. According to appellant, Detective Riker prejudiced the jury by describing the suspect in the video as a man, because while some of the witnesses described the shooter as a man dressed in women's clothing, one of the witnesses identified the shooter as a woman.[7] Appellant also asserts that Detective Riker should not have been permitted to highlight for the jury that the suspect was not wearing a glove on his left hand.[8]

---

[7] Two witnesses described the shooter as male: Rhonda Berkley said she knew the shooter was male because he had facial hair on his chin, and Leah Rossman described the shooter as a man wearing a floppy hat and shorts. Another witness, Christopher Brinker, testified that he saw a man pass behind his car through his rear-view mirror, and then saw what he perceived to be a woman wearing a big hat run past the front of his car in pursuit of the man.

[8] Investigators were able to link appellant to the shooting based on a left hand palm print lifted from the hood of a witness's car.

In the event the State attempts to have Detective Riker narrate the video at appellant's re-trial, we encourage the trial court to be mindful of Md. Rule 5-701 when ruling on appellant's objection to that testimony:

> **Opinion testimony by lay witnesses.** If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness *and* (2) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue.

(Emphasis added). We also commend to the trial court *Ragland v. State*, 385 Md. 706 (2005), which provides a thorough discussion of Md. Rules 5-701 and 5-702 dealing with lay and expert testimony, respectively. As a general rule, caution should be exercised by the trial court when determining whether to permit a police officer to narrate a video when the officer was not present during the events depicted therein.

**JUDGMENTS OF THE CIRCUIT COURT FOR BALTIMORE CITY VACATED. CASE REMANDED TO THAT COURT FOR A NEW TRIAL. COSTS TO BE PAID BY MAYOR AND CITY COUNCIL OF BALTIMORE.**