IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

STATE V. HANSEN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,
V.
DAPHNE HANSEN, APPELLANT.

Filed March 25, 2014.    No. A-13-653.

Appeal from the District Court for Antelope County: JAMES G. KUBE, Judge. Affirmed in part, and in part reversed and vacated, and cause remanded with directions to dismiss.

Matthew M. Munderloh, of Johnson & Mock, for appellant.

Jon Bruning, Attorney General, and J. Kirk Brown for appellee.

IRWIN, RIEDMANN, and BISHOP, Judges.

BISHOP, Judge.

## I. INTRODUCTION

Following a bench trial in the district court for Antelope County, Daphne Hansen was convicted of arson in the second degree, conspiracy to commit arson, and aiding the consummation of a felony. On appeal, Hansen argues the evidence was insufficient to support her convictions, she received ineffective assistance of counsel, and the trial court imposed excessive sentences. We affirm her convictions and sentences for arson in the second degree and conspiracy to commit arson; however, we reverse and vacate her conviction and sentence for aiding the consummation of a felony. We also find the record is insufficient to determine her claims for ineffective assistance of counsel.

## II. BACKGROUND

In the early morning hours on June 1, 2010, a vacant two-story house located on K Street in Neligh, Nebraska, was severely damaged by fire. An arson investigator for Nebraska's State Fire Marshal's office determined that the fire was intentionally set based on his observations of

- 1 -

the burn patterns in the center room of the house, and the investigator ruled out accidental causes such as an electrical cause. The investigator testified that a large circular burn pattern in the center of the room suggested that someone poured a flammable liquid (consistent with diesel or gas) in that area and set it on fire. No gas can was recovered at the house, although the investigator testified a plastic gas can would have melted or burned in the fire. The investigator further testified that a linear pattern on rolled up carpets found in the room may have been caused by an accelerant such as "Strypeeze" (a paint remover), a can of which was recovered in the house. The investigator described the damage to the house as "totaled."

The house was owned by Cindy Johnston, under a limited liability company (L.L.C.) established and owned by Johnston. Hansen was not legally a part of the L.L.C. due to her credit problems, although she considered herself part of the L.L.C. Johnston purchased the house, intending to restore and "flip" it with Hansen's help. Hansen testified that prior to the fire, she and Johnston personally and extensively worked on remodeling the home to prepare it for rental. Hansen admitted that she often wished the house would just go away and that she joked about it blowing up or catching on fire.

Hansen's longtime significant other, Lee Cameron, had originally financed the purchase of the house for $15,000, and he subsequently loaned the L.L.C. an additional $20,000 to fix the house. Cameron testified that he had loaned Hansen money repeatedly over the past 10 or 20 years to help her with her financial problems and that in 2009, he had hired a lawyer to deal with Hansen's bankruptcy.

Johnston carried an insurance policy on the house for $163,000, and subsequent to the fire, a check for that amount dated July 20, 2010, was delivered to Johnston (Hansen was not named on the insurance policy). During Hansen's interrogation, she stated that she and Johnston divided the insurance proceeds equally after repaying the $20,000 loan to Cameron. They also put some of the insurance money into the L.L.C. to pay for future debts.

Although the fire occurred on June 1, 2010, it was not until February 7, 2012, that Jerry Torres, an employee at a cafe owned by Hansen, confessed to setting the fire in exchange for payment from Hansen (Jerry first told investigators about the fire after he and his adult daughter, Connie Torres, were arrested for unrelated drug charges). According to Jerry, Hansen initially made jokes about burning down the house, but eventually became serious and offered him $1,000 to burn it down. Jerry claimed he started the fire by pouring diesel fuel in the dining area of the house, dousing rolled up carpet with "Strypeeze," and lighting a bag of papers with a lighter. According to Jerry's wife, Evelyn Torres, Hansen gave Evelyn money and drove her to purchase the 5-gallon gas can and diesel used by Jerry to start the fire. Instead of paying them cash after the fire, Hansen drove Jerry and Evelyn to a Wal-Mart and a pawnshop in Norfolk, Nebraska, and she gave them money to purchase a television, a television stand, a crib, toilet paper, a refrigerator, and a microwave.

The State filed an information against Hansen on July 23, 2012, charging her with one count of aiding and abetting arson and one count of conspiracy to commit arson. On March 25, 2013, the State filed an amended information, charging Hansen with arson in the second degree, conspiracy to commit arson, theft by deception, aiding the consummation of a felony, and false reporting.

A 2-day bench trial on the amended information was held on May 14 and 15, 2013. Included in the evidence against Hansen was the testimony of Jerry, Evelyn, and Connie, who each testified that Hansen wanted Jerry to burn down the house. Hansen testified in her own defense. The court found Hansen guilty of arson in the second degree, conspiracy to commit arson, and aiding the consummation of a felony. The court found Hansen not guilty on the theft by deception and false reporting charges.

Sentencing proceedings were held on July 31, 2013. The court sentenced Hansen to indeterminate terms of 24 to 30 months' imprisonment for her second degree arson conviction and 24 to 30 months' imprisonment for her conspiracy to commit arson conviction, to run concurrently with each other. The court sentenced Hansen to 6 to 12 months' imprisonment for her aiding the consummation of a felony conviction, to run consecutively to her second degree arson and conspiracy sentences.

Hansen appeals from her convictions and sentences.

## III. ASSIGNMENTS OF ERROR

Hansen assigns three errors on appeal, summarized and restated: (1) The evidence presented at trial was insufficient to support her convictions, (2) she received ineffective assistance of counsel at trial, and (3) her sentences were excessive.

## IV. STANDARD OF REVIEW

In reviewing a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Elseman*, 287 Neb. 134, 841 N.W.2d 225 (2014). The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

Sentences within statutory limits will be disturbed by an appellate court only if the sentences complained of were an abuse of judicial discretion. *State v. Abdulkadir*, 286 Neb. 417, 837 N.W.2d 510 (2013).

## V. ANALYSIS

### 1. SUFFICIENCY OF EVIDENCE

The only basis for Hansen's insufficiency of the evidence argument is that because the State's case against her hinged on Jerry's testimony, "[g]iven his felony background and numerous lies about the events leading up to the June 1, 2010, fire, no reasonable finder of fact could have believed his testimony." Brief for appellant at 11.

Evidence that a witness has been convicted of a crime may be admitted for purposes of attacking the witness' credibility. See Neb. Rev. Stat. § 27-609(1) (Reissue 2008) (providing circumstances under which evidence of prior convictions are admissible for impeachment purposes). An inconsistent or contradictory statement by a witness, who is not a party opponent, is a fact which may affect the trier of fact's evaluation of a witness' credibility or weight to be given such witness' testimony. See *State v. Dalland*, 287 Neb. 231, 842 N.W.2d 92 (2014). At

trial, evidence of Jerry's felony background (drug convictions) and inconsistent statements to the police were presented to the trier of fact, and the trier of fact nevertheless found Jerry to be a credible witness. We have repeatedly stated that "the credibility and weight of witness testimony are for the trier of fact, and we do not reassess witness credibility on appellate review." *State v. Huff*, 282 Neb. 78, 115, 802 N.W.2d 77, 106 (2011). As such, we will not reassess the credibility of Jerry as a witness. Our review is limited to whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt. *State v. Elseman*, 287 Neb. 134, 841 N.W.2d 225 (2014).

(a) Arson in Second Degree

Hansen was convicted of arson in the second degree. Pursuant to Neb. Rev. Stat. § 28-503(1) (Reissue 2008), a person commits arson in the second degree if he or she intentionally damages a building by starting a fire or causing an explosion or if a fire is started or an explosion is caused in the perpetration of any robbery, burglary, or felony criminal mischief. Where there is competent evidence that the fire was set intentionally, the question refines itself into whether the evidence supports a finding that the defendant set or caused the fire to be set. See *State v. McDonald*, 230 Neb. 85, 430 N.W.2d 282 (1988).

Competent evidence at trial clearly established that the fire on K Street on June 1, 2010, was intentionally set. Jerry testified he purposely started a fire in the house by pouring diesel fuel in the dining room, dousing an area of carpet with paint remover, and lighting a crumpled bag of papers. The investigator's testimony corroborated Jerry's testimony about the origin of the fire, testifying that the large circular burn pattern in the center of the house was consistent with the pooling of a flammable liquid, such as diesel, and that the more linear burn patterns were consistent with the use of an accelerant like paint remover, such as "Strypeeze" (which has a more "blobby" consistency).

Because competent evidence shows that the fire was intentionally set, the question becomes whether the evidence supports a finding that Hansen caused the fire to be set. See *McDonald, supra*. The evidence at trial reflects that Hansen had a financial motive to cause the fire to be set. Hansen's significant other, Cameron, testified that Hansen had serious financial problems over the years and that he often had to loan her money. Hansen admitted during her interrogation that she had some credit issues and financial problems. Hansen also admitted that she and Johnston split approximately $160,000 in insurance proceeds payable as a result of the fire damage to the house.

Several witnesses, including Hansen and Cameron, testified that Hansen joked about burning down the house. Jerry testified that Hansen often joked to him about burning down the house, making statements about how the house was a money pit and how she put so much money into the house that it would "be best if it was gone." However, Jerry testified that Hansen's joking tone changed over time and that "every time I would go to work, every week it would be a lot more, get more serious." Jerry testified that Hansen first asked him to start the fire about a month before June 1, 2010. He testified that one day at work, he asked Hansen how she wanted him to burn the house down, but she did not know. According to Jerry he replied, "I'll use some kind of gas or something," to which Hansen agreed. Jerry testified that he was scared to do it at

first and that the following week, Hansen asked him "why wasn't it done yet." Jerry testified he was supposed to get $1,000 from Hansen for starting the fire, but instead, about 2 weeks after the fire, she drove him and Evelyn to Wal-Mart and the pawnshop to purchase various household items.

Jerry's wife, Evelyn, also testified to Hansen's participation in starting the fire. According to Evelyn, the Sunday afternoon before the fire (May 30, 2010), Hansen drove Evelyn to a store where Evelyn purchased a gas can. Hansen then drove Evelyn to a gas station where Evelyn filled the can with diesel. Evelyn testified Hansen gave her money to make these purchases. During Hansen's interrogation, she admitted she possibly gave a ride to Evelyn to purchase a gas can. A receipt dated May 30, 2010, at 2:08 p.m. from the store reflects a single purchase of a gas can, corroborating Evelyn's testimony that she purchased a gas can around that time. Evelyn testified that she took the gas can full of diesel fuel to the house on K Street and left it inside. Evelyn testified she was aware that Jerry planned on burning down the house because Hansen wanted him to do it.

Connie also testified she was aware that Hansen and Jerry planned to burn down the house because she had eavesdropped on telephone conversations between Jerry and Hansen. Connie also testified she overheard a conversation in person at the Torres home between Hansen and Jerry where Hansen stated, "The sooner I burn down that house, the sooner it's out of my way."

Hansen testified in her own defense. Hansen denied she ever requested Jerry to burn down the house, stated Johnston paid her part of the insurance proceeds for Hansen's help in remodeling the house, and maintained that although she did drive Jerry and Evelyn to Wal-Mart and the pawnshop and provided them with money to purchase some household items, those purchases were an advance on Jerry's pay from his job at her cafe. Although Hansen's testimony largely conflicted with the testimony of the Torreses, where witnesses contradict each other, it is simply a matter of credibility. See *State v. Smith*, 286 Neb. 856, 839 N.W.2d 333 (2013). Witness credibility is not to be reassessed on appellate review. *State v. Banks*, 278 Neb. 342, 771 N.W.2d 75 (2009).

Based on the testimony of Jerry, Evelyn, and Connie, as well as the other evidence in the record, we conclude there was sufficient competent evidence supporting a finding that Hansen intentionally damaged the house on K Street by causing the fire to be set. We therefore affirm Hansen's conviction for arson in the second degree.

### (b) Conspiracy to Commit Arson

Hansen was convicted of conspiracy to commit arson. A person is guilty of criminal conspiracy if the person intends to promote or facilitate the commission of a felony, agrees with one or more persons to commit that felony, and then the person or a coconspirator commits an overt act furthering the conspiracy. See Neb. Rev. Stat. § 28-202 (Reissue 2008); *State v. Nave*, 284 Neb. 477, 821 N.W.2d 723 (2012), *cert. denied* ___ U.S. ___, 133 S. Ct. 1595, 185 L. Ed. 2d 591 (2013). As discussed above, Jerry, Evelyn, and Connie each testified that Hansen intended and agreed that Jerry would burn down the house on K Street and thereby commit the felony of arson. According to Jerry, he intentionally set the fire because Hansen asked that he do it in exchange for payment. The testimony at trial further reflects that Hansen facilitated the arson by

paying for the gas can and diesel to be used to start the fire. We find the evidence at trial was sufficient to support Hansen's conviction for conspiracy to commit arson, and we affirm this conviction.

(c) Aiding Consummation of Felony

The trial court found that Hansen was guilty of aiding the consummation of a felony. A person is guilty of aiding the consummation of a felony if he intentionally aids another to secrete, disguise, or convert the proceeds of a felony or otherwise profit from a felony. Neb. Rev. Stat. § 28-205(1) (Reissue 2008). The trial court found that "the defendant did intentionally aid another to convert the proceeds of an insurance claim, thereby profiting from the commission of a felony." The trial court's finding is not clear as to whom the court found Hansen to have aided, nor is it clear as to whom the court found to have profited. Hansen does not specifically challenge the lack of clarity in the trial court's findings; rather, Hansen generally claims insufficiency of the evidence with regard to all convictions. Hansen argues only that the "case against Hansen was built substantially on the testimony of . . . Jerry" and that "[g]iven [Jerry's] felony background and numerous lies about the events leading up to the June 1, 2010, fire, no reasonable finder of fact could have believed his testimony." Brief for appellant at 10-11. While we do not agree with Hansen's argument that witness credibility renders the evidence insufficient, we nevertheless agree for other reasons that the evidence is insufficient to support a conviction under § 28-205(1).

We start out by noting that convictions under § 28-205(1), enacted in 1977, have rarely been addressed by our appellate courts. However, we find some guidance in *State v. Huffman*, 222 Neb. 512, 385 N.W.2d 85 (1986). Although not specifically citing to § 28-205(1), the Nebraska Supreme Court found the evidence sufficient in that case to affirm convictions for aiding in the consummation of a felony, as well as two burglary convictions. In *Huffman*, the defendant had participated in two burglaries with an accomplice. Shortly after the second burglary, the accomplice opened a checking account with a $25 deposit but later purchased $320 in merchandise at a local store, knowing the check was insufficiently funded. The next day, the defendant returned some of the merchandise to the store and used the store receipt to obtain a cash refund. The defendant and his accomplice then shared the cash equally between them. The defendant admitted to returning the merchandise and dividing the money, but denied he knew the check was insufficiently funded when the accomplice gave it to the store. Upon this evidence, the court affirmed the defendant's aiding in the consummation of a felony conviction.

Important to the underlying facts in *Huffman*, *supra*, is the fact that the defendant took the merchandise acquired unlawfully by his accomplice and proceeded to convert that merchandise to cash, which cash was then shared between the defendant and his accomplice. Evident in the facts of *Huffman* and looking at the plain language of § 28-205(1), in order to sustain a conviction for aiding the consummation of a felony, a defendant must be shown to be aiding *another person* in secreting, disguising, or converting the proceeds of a felony or aiding that other person to otherwise profit from the felony.

We conclude there was insufficient evidence in the present case to find either that Hansen intentionally aided another person to "secrete, disguise, or convert" the house insurance proceeds resulting from the arson or that she intentionally aided another person to "otherwise profit" from

the house insurance proceeds resulting from the arson. See § 28-205(1). While there is evidence in the record reflecting that other individuals also received house insurance proceeds after the arson, there is no evidence that any of those other people had anything to do with the underlying arson either directly or through Hansen. Although Hansen "profited" from the insurance proceeds resulting from the arson, in order to support a conviction under § 28-205(1), there must be evidence that one of the other people receiving a portion of the house insurance proceeds was involved with Hansen in committing the underlying felony. There is no such evidence in this record, even when viewing the evidence in a light most favorable to the prosecution. Accordingly, the trial court's conclusion that Hansen "intentionally aid[ed] another to convert the proceeds of an insurance claim" does not support a conviction for aiding the consummation of a felony; therefore, Hansen's conviction and sentence under § 28-205(1) for aiding the consummation of a felony must be reversed.

### 2. INEFFECTIVE ASSISTANCE OF COUNSEL

A claim of ineffective assistance of counsel need not be dismissed merely because it is made on direct appeal. *State v. McClain*, 285 Neb. 537, 827 N.W.2d 814 (2013). The determining factor is whether the record is sufficient to adequately review the question. *Id*. An ineffective assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing. *State v. Watt*, 285 Neb. 647, 832 N.W.2d 459 (2013).

Hansen alleges four ways in which she believes her trial counsel was ineffective, each of which regards trial counsel's actions or trial strategy not contained in our record: trial counsel's advice to Hansen regarding her waiver of a jury trial, trial counsel's failure to pursue or call potential alibi witnesses, trial counsel's failure to pursue witnesses regarding an alternative suspect, and trial counsel's calling of Mandy Ofe as a witness. An evaluation of trial counsel's advice to Hansen, his pretrial investigation, or his trial strategy would require an evaluation of matters not contained in the record. Therefore, we find the record is insufficient to address Hansen's claims for ineffective assistance of counsel.

### 3. EXCESSIVE SENTENCES

Hansen contends that her sentences were excessive. Sentences within statutory limits will be disturbed by an appellate court only if the sentences complained of were an abuse of judicial discretion. *State v. Abdulkadir*, 286 Neb. 417, 837 N.W.2d 510 (2013). It is the minimum portion of an indeterminate sentence which measures its severity. *State v. Nevels*, 235 Neb. 39, 453 N.W.2d 579 (1990). When imposing a sentence, a judge should consider the defendant's age, mentality, education, experience, and social and cultural background, as well as his or her past criminal record or law-abiding conduct, and motivation for the offense, nature of the offense, and the amount of violence involved in the commission of the crime. *State v. Watt*, 285 Neb. 647, 832 N.W.2d 459 (2013).

Hansen was 61 years old at the time of sentencing. Her presentence investigation (PSI) reflected that her only prior criminal history included fines for reckless driving in 1995 and speeding in 2008. Throughout the PSI, Hansen continued to deny involvement with the arson and continued to blame her codefendants and her attorney. The PSI's overall risk/need profile noted a moderate-low risk level for recidivism.

The court received eight letters of support for Hansen, reviewed the PSI, considered Hansen's lack of criminal history, and considered the fact that she was an "active member of this community" and a "successful businessperson." However, the court stated it reviewed Neb. Rev. Stat. § 29-2260 (Reissue 2008) and found Hansen was not a qualified candidate for probation because a sentence less than incarceration would depreciate the seriousness of the offense due to the danger posed to the firefighters responding to the fire. The court therefore sentenced Hansen to indeterminate terms of 24 to 30 months' imprisonment for her second degree arson conviction (a Class III felony) and 24 to 30 months' imprisonment for her conspiracy to commit arson conviction (a Class III felony), to run concurrently with each other. The court sentenced Hansen to 6 to 12 months' imprisonment for her aiding the consummation of a felony conviction (a Class IV felony), to run consecutively to her second degree arson and conspiracy sentences; however, in light of our reversal on this conviction, this sentence will be vacated.

A Class III felony is punishable by 1 to 20 years' imprisonment, a $25,000 fine, or both. Neb. Rev. Stat. § 28-105 (Reissue 2008). The court's sentences were within the statutory limits and were at the low end of the statutory range. The trial court considered the many mitigating factors in Hansen's PSI, but nevertheless found that a term of incarceration was appropriate because of the nature and seriousness of the fire and potential for injury to responding firefighters. We cannot say that Hansen's sentences for second degree arson and conspiracy were an abuse of discretion.

## VI. CONCLUSION

For the reasons stated above, we affirm Hansen's convictions and sentences for arson in the second degree and conspiracy to commit arson. We reverse and vacate the judgment of conviction and sentence for aiding the consummation of a felony, and we remand the cause to the district court with directions to dismiss the same.

AFFIRMED IN PART, AND IN PART REVERSED AND VACATED, AND CAUSE REMANDED WITH DIRECTIONS TO DISMISS.