*State of Maryland v. Brandon Payton*, No. 14, September Term, 2018. Opinion by Greene, J.

**CRIMINAL LAW – CRIMINAL PROCEDURE – REOPENING THE STATE'S CASE-IN-CHIEF**

The Court of Appeals held that, although trial judges have discretion to permit the State to reopen its case-in-chief, in this case, the trial judge abused that discretion. The trial judge impermissibly weighed the nature of the charges pending against Respondent in reaching the decision to allow the State to reopen its case-in-chief. In addition, he exceeded the bounds of judicial impartiality by allowing the State to correct a perceived defect in the State's case. Finally, the judge abused his discretion when he allowed the State to fill a gap in its case to avoid granting Respondent's motion for judgment of acquittal. As a result, in the present case, Respondent's right to a fair trial was compromised, thereby warranting a remand for purposes of a new trial.

Circuit Court for Baltimore City
Case No. 115224002
Argued: September 12, 2018

IN THE COURT OF APPEALS

OF MARYLAND

No. 14

September Term, 2018

_____

STATE OF MARYLAND

v.

BRANDON PAYTON

_____

Barbera, C.J.
Greene,
*Adkins,
McDonald,
Watts,
Hotten,
Getty,

JJ.

_____

Opinion by Greene, J.

_____

Filed: November 1, 2018

*Adkins, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the MD. Constitution, Article IV, Section 3A, she also participated in the decision and adoption of this opinion.

 Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document * authentic.



Suzanne C. Johnson, Acting Clerk

Petitioner, the State of Maryland, asks this Court to determine whether a trial judge's decision to allow the State to reopen its case-in-chief to recall an expert witness, after the defense moved for judgment of acquittal, was a proper exercise of the trial judge's discretion. We shall hold that there may be circumstances when a trial judge in the exercise of his or her discretion may allow the State to reopen its case-in-chief after the prosecutor has rested. In the present case, however, the trial judge abused that discretion. The trial judge impermissibly weighed the nature of the charges pending against Respondent Brandon Payton ("Mr. Payton" or "Respondent") as a factor in his decision to permit the reopening of the State's case-in-chief. In addition, the judge impermissibly exceeded the bounds of judicial impartiality when he instructed the State to clarify a gap that the trial judge perceived in the State's case. Finally, pursuant to this Court's established guidelines, it was inappropriate for the trial judge to exercise his discretion to allow the State to reopen its case-in-chief, rather than rule on Respondent's motion for judgment of acquittal, where the trial judge had determined that there was insufficient relevant evidence presented to sustain a conviction. The trial judge's decision compromised Respondent's right to a fair trial. Therefore, we conclude that Respondent is entitled to a new trial.

## FACTUAL & PROCEDURAL BACKGROUND

Mr. Payton was tried for murder and related charges before a jury in the Circuit Court for Baltimore City in September 2016.[1] The charges resulted from an incident on June 12, 2015, during which the victim died from multiple gunshot wounds.

---

[1] Although it does not impact our review of this case, to properly explain the posture of

(continued . . .)

A witness to the shooting, Christopher Brinker, testified that he believed that the shooter's hand touched the hood of his vehicle when the shooter passed by in pursuit of the victim. The handprint became a key part of the State's case against Mr. Payton.

Also among the State's witnesses was Sean Dorr, a certified latent print examiner employed by the Baltimore City Police Department, who testified as an expert witness. Mr. Dorr explained that there were three lift cards of the alleged shooter's latent print[2] taken from the hood of Mr. Brinker's car. One lift card was suitable for comparison. Mr. Dorr scanned this lift card into the Automated Fingerprint Identification System ("AFIS").[3] The AFIS compared the lift card to its database and produced a candidate list.[4] Mr. Dorr manually compared the candidates' prints to the unknown latent print to determine if one was an exact match. Ultimately, Mr. Dorr testified that he identified the latent print "as an

___

(. . . continued)
this case, we note that this trial was the State's second attempt to prosecute Mr. Payton on these charges before the same judge. The first trial ended in a mistrial on April 26, 2016 because the jurors were unable to reach a unanimous verdict.

[2] Mr. Dorr described a latent print as "any chance or accidental impression of the friction ridge skin that you leave on an object when you touch it." This type of print stands in contrast to an inked or known print, which Mr. Dorr explained as "an intentional reproduction of that friction ridge skin, either by placing a printer's ink on that area and rolling and tapping that onto a fingerprint card, or [using a] live scan machine. . . that would give you a digital copy of the friction ridge skin on a fingerprint card."

[3] The AFIS, as Mr. Dorr explained it, compares unknown prints to known prints that are in Maryland's database. The known prints in the database come from individuals who have been arrested, work in children's services, work as nurses, or have applied for a gun permit.

[4] Mr. Dorr explained that the AFIS compared the unknown latent print and its friction ridge details to known prints in its system. The AFIS then created a list of 20 candidates that it believed had the exact same friction ridge details.

2

impression of the left palm of Brandon Payton, State Identification Number ("SID number") 2476078."[5]

Mr. Dorr also stated that on August 9, 2016 he took Mr. Payton's fingerprints and made fingerprint cards. Mr. Dorr testified that he did not compare the August 9 prints to the prints from the AFIS; however, he verified that the August 9 prints were associated with Mr. Payton's SID number.

At this point, defense counsel objected. Outside the presence of the jury, defense counsel and the trial judge told the prosecutor that they were confused. The judge assumed that the State was trying connect the August 9 print to the print pulled from the AFIS, and connect the print from the AFIS to the unknown latent print. The judge, however, noted the gap in this logic, stating, "that's not what [Mr. Dorr] testified to." The trial judge instructed the prosecutor to "go back" and "be as clear as you possibly can as to what [was] compared."

Subsequently, the prosecutor continued questioning Mr. Dorr. Mr. Dorr explained that he had "known prints" from the AFIS, which were for SID number 2476078. Mr. Dorr

---

[5] Another expert witness for the State, Ms. Elizabeth Patti, testified that SID numbers are linked to an individual. Likewise, "[a]s this Court has previously explained, [a] SID . . . number is a unique number directly linked to an individual's fingerprints. Because of that link, no two persons should have the same SID number . . . ." *Bryant v. State*, 436 Md. 653, 673-74, 84 A.3d 125, 137 (2014) (quoting *State v. Dett*, 391 Md. 81, 85, 891 A.2d 1113, 1115 (2006)). Unlike SID numbers, Mr. Dorr explained that transaction numbers are linked to fingerprint cards. Thus, multiple transaction numbers may be assigned to one SID number.

said that he established that the prints he took from Mr. Payton on August 9 were for SID number 2476078.

After the State rested its case, Mr. Payton's counsel moved for judgment of acquittal without particularizing how the State had not proven its case. The trial judge asked the State when, if ever, it connected the unknown latent print to Mr. Payton. The State offered an explanation, and portions of Mr. Dorr's testimony were replayed. The trial judge remained unpersuaded that the State had connected the unknown latent print to Mr. Payton and, therefore, was convinced that the State had failed to place Mr. Payton at the scene of the crime.[6] The trial judge explained, "if I am confused . . . are [the members of the jury] confused? I mean, right now I have to get past this for my own satisfaction to rule in your favor . . . but I'm just totally at sea as to what [the State had] proven in this case." He went on to say:

> THE COURT: I am more than frustrated. Right this minute I don't think you've made your case. So my question is, do I simply grant the motion to dismiss which I could easily do based on what I have heard of this testimony, because you have not convinced me that [Mr. Payton], that you have put this man at the scene of this crime.
> Now, if you want me to allow you to reopen your case to call your expert back in – and [Mr. Payton's counsel] I'm sure is going to object to that – and ask that question, in your judgment, to a reasonable degree of certainty, is the print that was taken off of that car Mr. Brandon Payton's print, if you want to call your witness back for five minutes of testimony with whatever cross-examination, I am going to permit that, because I think justice needs to be done and I – generally speaking, I am generally speaking, not inclined to punish clients – in your case, the public is your client – for

---

[6] Based on the record, it appears that the confusion revolved around the significance of a SID number, as the prosecutor presented it. The prosecutor argued that the SID number is the control; verifying that the prints are associated with the same SID number was an identification of Mr. Payton. The trial court's understanding was that "the same SID number doesn't matter" because it is just an identifier that is associated with a print.

something that a lawyer may or may not have done. But I don't think you've made your case at this moment. I'm going to permit you to do that.

And [Mr. Payton's counsel], you're going to object, I'm assuming?

Mr. Payton's counsel said she was "absolutely" objecting. The court "d[idn't] blame" Mr. Payton's counsel for challenging the reopening, but the court persisted, explaining to the State:

> THE COURT: I'm going to let you reopen your case Friday morning for brief testimony to fill in the gap in your case –
>
> THE STATE: Yes, your Honor.
>
> THE COURT: Because I think you intended to do it and I don't think you did it, and the fact that you can't point me to right now – I mean, I've listened to what you're talking about here and it is not convincing me at all. I think you got lost in the weeds, quite frankly. And so, I'm going to let you do it, but you know, right this minute, I'm not seeing it. You're not convincing me that you've made your case because you haven't put this man on the scene of the crime. And –
>
> THE STATE: Yes, your Honor.
>
> THE COURT: Again, if you can't do it on Friday, that's fine, then I will grant the motion.
>
> THE STATE: Yes, your Honor.
>
> THE COURT: So you have, you have – and I don't want to go on for an hour and a half of testimony on Friday. You've already laid the groundwork. You just simply didn't ask the punch line question which to me was, is this the print of this man [Mr. Payton].

Again, Mr. Payton's counsel objected. Counsel reasoned that recalling Mr. Dorr would be the last thing the jury heard, and it would be in isolation to other evidence presented. The trial court responded:

> THE COURT: I understand your point, but I – you know, and I'm not crazy about the notion, but as I said, if this were a lesser crime than a murder, I

might not be so generous. It is a murder and I think Mr. Payton is – deserves a fair trial and I've tried to do it and the State deserves a fair trial and I'm trying to do that. So I'm trying to balance these competing needs. And it may very well be that if he's convicted, you'll have grounds for appeal. I don't know. But at this point, I'm going to let this – I'm going to let you re-call your witness for a very brief period of time for that one purpose.

Two days later, Mr. Payton's counsel objected again to Mr. Dorr re-testifying. Mr. Payton's counsel stated:

> MR. PAYTON'S COUNSEL: I'm objecting to this entire testimony with [Mr.] Dorr being allowed to come back and testify. This is extremely prejudicial. This – we took a break yesterday . . . . This, this rings loud and clear. This is the crucial key piece of evidence. This is the only evidence linking Mr. Payton and this is the last thing and . . . in isolation that the jury's [going to] hear, and this is extremely prejudicial. It's unfair, and I'm asking the Court not to allow the State to reopen its case and have [Mr.] Dorr re-testify to this prejudicial piece of evidence at this point, the way it's presented right now in isolation.

The trial court, however, overruled the objection:

> THE COURT: I think I have made clear that if this were a simple drug possession case, I might, in fact, not be allowing this. But this is a murder case. It's an execution-style murder case. I think there is a strong public interest in having definitive resolution of cases involving crimes as serious as this one. And there – although there may very well be some prejudice, I'm not sure, about doing this in isolation or not, but I understand the point [Mr. Payton's counsel is] making. I feel in this case though that the public interest is sufficiently strong and the possible prejudice is sufficiently speculative that I think it's – I'm going to permit it. But – I'm going to permit it.

The State recalled Mr. Dorr to the witness stand and sought to assuage the trial judge's confusion by connecting the fingerprint evidence to Respondent's SID number. Mr. Dorr testified that the unknown lift card was identified as the left palm of Mr. Payton, SID number 2476078. He also testified that he took Mr. Payton's fingerprints on August 9, 2016, and he ascertained that the SID number associated with Mr. Payton is 2476078.

6

Mr. Dorr went on to explain that matching prints are designated to have the same SID number, but each print has a different transaction number. The State of Maryland's AFIS only knows Mr. Payton as having one SID number.

After Mr. Payton's attorney cross-examined Mr. Dorr, the State again rested its case. Mr. Payton moved for judgment of acquittal, which the trial judge denied. Without offering any evidence, Mr. Payton rested his case. Then, Mr. Payton renewed his motion for judgment of acquittal. The trial court denied the renewed motion. The case proceeded to closing arguments, after which the trial judge sent the case to the jury for deliberations. The jury convicted Mr. Payton.[7]

Mr. Payton appealed his conviction to the Court of Special Appeals. *Payton v. State*, 235 Md. App. 524, 178 A.3d 633 (2018). The intermediate appellate court held that, in this case, the trial court abused its discretion when it reopened the State's case. *Id*. at 537, 178 A.3d at 641. The court determined that Mr. Payton properly challenged the trial court's decision, so it was preserved for appellate review. *Id*. at 531 n. 4, 178 A.3d at 637 n. 4.

Reaching the merits of the trial court's decision, the intermediate appellate court explained that, rather than ruling on Mr. Payton's motion for judgment of acquittal, "the trial court elected to *sua sponte* reopen the case for further testimony, and advised the State on how to avoid a judgment of acquittal." *Id*. at 537, 178 A.3d at 641. The Court of Special Appeals determined that the evidence was important. *Id*. Moreover, the evidence was

---

[7] Specifically, the jury convicted Mr. Payton of first-degree murder, second-degree murder and use of a firearm in the commission of a crime of violence. The first-degree and second-degree murder charges were merged for sentencing.

highlighted for the jury by being the last thing the jury heard. *Id*. The Court of Special Appeals held that "where the trial court was on the precipice of granting an acquittal, the [trial] court abused its discretion by abandoning its position of impartiality and *sua sponte* reopening the State's case to correct a perceived defect." *Id*. In closing, the intermediate appellate court clarified that its opinion should not be construed "as a *per se* rule prohibiting the trial court from *sua sponte* reopening the evidence in a jury trial. Such a decision . . . should be made cautiously and with a vigilant eye to ensure that the court does not cross the line of impartiality." *Id*. at 538, 178 A.3d at 641. Ultimately, the Court of Special Appeals vacated the trial court's judgment and remanded the case for a new trial. *Id*. at 540, 178 A.3d at 642.

The State timely petitioned this Court for a writ of certiorari, which we granted. *State v. Payton*, 459 Md. 170, 185 A.3d 63 (2018). Reframed for clarity, the issue presented in this case is:

> Did the trial court abuse its discretion when it reopened the State's case to hear additional testimony, before ruling on the Defendant's motion for judgment of acquittal?[8]

---

[8] The issues presented, as stated by Petitioner, are:
1. Where Payton made specific objections to reopening the State's case for more fingerprint-expert testimony only on the grounds that the additional fingerprint testimony would be the last thing that the jury would hear and that it would be presented in isolation, were defense counsel's claims that reopening would be "unfair" and "extremely prejudicial," or the trial court's statement that the reopening could "very well . . . be grounds for appeal" sufficient to preserve a judicial-partiality claim?
2. Did the Court of Special Appeals err in concluding that the trial court abused its discretion in reopening the State's case *sua sponte*?
3. Where the reopening of the State's case was based on the trial court's incorrect assumption that there had been no testimony linking Payton to the handprint, when

(continued . . .)

8

*Parties' Arguments*

First, Petitioner argues that the Court of Special Appeals erred in concluding that Respondent's claim of lack of judicial impartiality was preserved for appellate review. Petitioner posits that the issue was not plainly raised before the trial court. Next, Petitioner claims that, even if the issue were preserved for appeal, the trial court's decision to allow the State to reopen its case-in-chief fell within the trial court's broad discretion. Lastly, Petitioner contends that any evidence received on reopening was cumulative. As such, Petitioner claims that any error was harmless beyond a reasonable doubt.

Respondent asserts that his claim of lack of judicial impartiality was preserved for appeal because Respondent objected to the trial judge's entire procedure of permitting the State's to reopen its case. Even if the issue were not preserved, Respondent argues that this Court should exercise its discretion to review Respondent's claim of lack of judicial impartiality. Furthermore, Respondent maintains that trial courts do not have discretion to act on their own initiative to allow reopening of the State's case. If trial courts do have such discretion, Respondent argues that the trial court, in this case, abused that discretion. Finally, Respondent argues that when a trial judge departs from a position of neutrality, such an error can never be considered harmless. Alternatively, Respondent contends that

_____

(. . . continued)

> in fact three State's witnesses had already testified that the handprint had been linked to Payton, was any error [] harmless beyond a reasonable doubt because the testimony was cumulative of the testimony of three prior witnesses linking Payton to the handprint?

459 Md. 170, 185 A.3d 63.

if this Court utilizes the harmless error framework, the error here cannot be harmless because the trial court, at a minimum, unfairly permitted the State to reopen its case to emphasize certain evidence.

## Preservation

Before we reach the merits of the case, we first address the preservation issue. Petitioner preemptively argues that Respondent's claim of lack of judicial impartiality was not preserved for appellate review. Relying on *Diggs v. State*, 409 Md. 260, 973 A.2d 796 (2009), Petitioner asserts that Respondent failed to lodge an objection on the grounds of lack of judicial impartiality. Further, Petitioner contends that, because Respondent voiced such specific objections to the State's case being reopened, the objections did not alert the trial judge that his impartiality was at issue. Respondent counters that he effectively objected to the trial court's procedure. Alternatively, if the matter were not preserved, Respondent contends that this Court should exercise its discretion to review Respondent's claim of lack of judicial impartiality. The Court of Special Appeals concluded that Respondent's argument was preserved for appellate review. *Payton*, 235 Md. App. at 531 n. 4, 178 A.3d at 637 n.4. We agree.

Maryland Rule 8-131(a) governs preservation. It provides that, ordinarily, an appellate court will not review an "issue unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal." In the present case, the objection plainly appeared in the record.

10

In *Diggs*, the defense attorneys, on behalf of their clients, claimed that the trial judge was impartial, even though, "[i]n nearly every instance of alleged judicial misconduct, neither [defense attorney] objected." 409 Md. at 283-87, 973 A.2d at 809-12 (invoking the "plain error" doctrine to reach the defendants' claims of lack of judicial impartiality). Before concluding, we advised that the onus is on defense counsel to object in order to preserve an issue for review. *Id*. at 294, 973 A.2d at 816. Failure to object, we cautioned, will only be countenanced when a trial judge "exhibits repeated and egregious behavior of partiality, reflective of bias." *Id*.

Here, unlike in *Diggs*, Respondent made objections to the trial court's action. Respondent objected when the trial judge initially instructed the State to reopen its case and also two days later, just before Mr. Dorr testified for the second time. Respondent pointed out that the trial judge's decision was "unfair" and "extremely prejudicial." Urging the court to reconsider its decision, Respondent clearly asked the court "not to allow the State to reopen its case and have [Mr.] Dorr re-testify."

Perhaps most telling, the trial court recognized the ramifications of its decision. Specifically, the trial judge invited Respondent to object and "d[idn't] blame" Respondent for challenging the reopening. The trial judge expressed his concern that he was "not crazy about the notion," and he was "very sympathetic" toward Respondent's position. The trial judge even acknowledged that Respondent "may very well . . . have grounds for appeal." Under these circumstances, the trial court had ample opportunity to correct any mistakes in its ruling. *See Bible v. State*, 411 Md. 138, 149-52, 982 A.2d 348, 354-56 (2009) (citations omitted) (explaining that the purpose of the preservation rule is to prevent parties

11

from "sandbagging" the trial judge, along with promoting fairness and judicial economy). Thus, we reject Petitioner's preservation argument and reach the merits of the trial judge's decision to reopen the State's case.[9]

### Reopening the State's Case-in-Chief

Petitioner argues that the trial court's decision to reopen the State's case to recall Mr. Dorr was appropriate. Petitioner contends that the presiding judge properly exercised his discretion to allow the State to reopen its case pursuant to *Booze v. State*, 334 Md. 64, 637 A.2d 1214 (1994). Additionally, Petitioner claims that because the trial judge misperceived a defect in the State's case there can be no prejudice to Respondent.

Respondent contends that trial courts do not have the authority to *sua sponte* allow reopening the State's case. If trial courts do have such discretion, Respondent argues that the trial court abused its discretion in this case because it assumed the role of prosecutor. Also, Respondent contends that *Booze v. State*, when properly considered, does not support the trial court's decision to permit the State to reopen its case.

In the present case, Mr. Payton moved for judgment of acquittal. The trial judge did not rule on Mr. Payton's motion, even though he was convinced that the State had not met its burden. Instead of ruling on the motion, the trial judge, on his own initiative, allowed the State to reopen its case-in-chief so that Mr. Dorr could re-testify. Determining the propriety of the trial judge's action requires that we analyze the rules pertinent to this juncture of a trial.

---

[9] Given our conclusion that the claim of judicial impartiality was preserved, we need not and do not decide whether the "plain error" doctrine applies in this case.

12

*Motion for Judgment of Acquittal*

Under Maryland Rule 4-324, a criminal defendant may move for judgment of acquittal at the close of the State's case-in-chief. The defense may renew its motion for judgment of acquittal at the conclusion of all the evidence in the case.

Upon consideration of the defendant's motion, the trial court must assess the legal sufficiency of the State's evidence. *State v. Taylor*, 371 Md. 617, 651, 810 A.2d 964, 984 (2002) (citing *Brooks v. State*, 299 Md. 146, 150, 472 A.2d 981, 983 (1984)). Whether the State's evidence is legally sufficient does not amount to a determination of whether the State has proven its case beyond a reasonable doubt. *Id*. Rather, the trial court must weigh whether the State's evidence is legally sufficient to sustain a conviction. *Id*.

If the trial court finds the evidence legally sufficient, it should deny the defendant's motion. *Id*. The trial court's decision to deny the defendant's motion is reviewable, but appellate review is limited. *Morgan v. State*, 134 Md. App. 113, 126, 759 A.2d 306, 312-13 (2000). The reviewing court "merely ascertains whether there is any relevant evidence, properly before the jury, legally sufficient to sustain a conviction." *Id*. (citation omitted). On the other hand, if the trial judge does not find evidence that is legally sufficient to sustain a conviction, the judge must grant the motion for judgment of acquittal. *Taylor*, 371 Md. at 651, 810 A.2d at 984. Granting the defendant's motion has the same force and effect as the fact finder rendering a verdict of not guilty. *Id*. at 651, 810 A.2d at 983; *Pugh v. State*, 271 Md. 701, 705, 319 A.2d 542, 544 (1974) (quoting *State v. Shields*, 49 Md.

301, 303 (1878)); *Brooks*, 299 Md. at 150-51, 472 A.2d at 983-84. Succinctly, the granting of a motion for judgment of acquittal, ordinarily, is not subject to an appeal.

*Protecting the Defendant's Right to a Fair Trial*

Although there are general rules for the order in which evidence is presented to a jury, the customary order of proof may yield to the circumstances of a trial. *State v. Hepple*, 279 Md. 265, 270-71, 368 A.2d 445, 449 (1977). For instance, the customary order in which evidence is presented to the jury may differ when the State's case-in-chief is reopened after the State has rested. *Id*. at 271, 368 A.2d at 449.

It is well settled that when deciding whether to allow the State to reopen its case, the trial court must ensure that reopening the State's case does not "impair[] the ability of the defendant to answer and otherwise receive a fair trial." *Booze*, 334 Md. at 76, 637 A.2d at 1220. We have identified several factors relevant to that inquiry. *Id*. at 74-77, 637 A.2d at 1219-20. The factors pertain to the reason for the timing of the evidence, the nature of the evidence, and the effect of belatedly admitting the evidence. *Id*. at 74-76, 637 A.2d at 1219-20. Additionally, we have cautioned that trial courts should be reluctant to exercise their discretion to permit the State to reopen its case-in-chief and should only do so under extraordinary circumstances. *Id.* at 70, 637 A.2d at 1217 (explaining that trial courts should be reluctant to grant reopenings because it is desirable to conduct orderly trials and there is danger that the trier of fact will unduly emphasize evidence offered upon reopening) (citations omitted).

We do, however, afford deference to the trial court's determination of whether the circumstances warrant reopening the State's case. A reviewing court will only disturb such

14

a decision if the trial court abused its discretion. *See id*. at 79, 637 A.2d at 1221 (holding that the trial court abused its discretion in permitting the State to reopen its case to receive testimony from a previously unavailable witness); *Wisneski v. State*, 169 Md. App. 527, 905 A.2d 385 (2006) (deciding that the trial court did not abuse its discretion in letting the State reopen its case to introduce a stipulation into evidence); *Cason v. State*, 140 Md. App. 379, 780 A.2d 466 (2001) (determining that the suppression hearing judge did not abuse his discretion in having the State reopen its case to receive tangible evidence that had been referenced during trial). An appellate court's review must, likewise, inquire into whether the trial court's decision has impaired the defendant's right to a fair trial. *Collins v. State*, 373 Md. 130, 142, 816 A.2d 919, 925 (2003) (stating that a trial court's decision to permit the State to reopen its case "will not constitute an abuse of discretion so long as [it] does not impair the ability of the defendant to answer and otherwise receive a fair trial.") (citation omitted) (internal quotation marks omitted).

Contrary to Respondent's suggestion, this Court has never imposed a hard and fast rule that trial courts lack authority to, *sua sponte*, allow the State's case-in-chief to be reopened. Indeed, this Court has recognized that trial courts have discretion to invoke their authority to allow the State to reopen its case. *Hepple*, 279 Md. at 273, 368 A.2d at 450 ("The fact that the prosecution made no motion to reopen . . . is not dispositive, of course, since the court could have invoked its discretionary power sua sponte."). We adhere to that same principle today.

As our jurisprudence makes clear, the trial court's discretion is broad, though not unlimited. *Booze*, 334 Md. at 68, 637 A.2d at 1216. The trial court's discretion to allow

15

the State to reopen its case is limited by the defendant's ability to answer and receive a fair trial. *Id.* at 69, 637 A.2d at 1216. This determination is made with reference to the evidence's nature and probable effect, and the reason for its delay. *Id.* at 76, 637 A.2d at 1220. This standard, however, is not the only safeguard this Court has afforded a criminal defendant to ensure a fair trial.

Criminal defendants have the right to a fair, yet not a perfect, trial. *Crawford v. State*, 285 Md. 431, 451, 404 A.2d 244, 254 (1979). "It is well settled in Maryland that fundamental to a defendant's right to a fair trial is an impartial and disinterested judge." *Jefferson-El v. State*, 330 Md. 99, 105, 622 A.2d 737, 740 (1993). The right to an impartial and disinterested judge includes the right to a judge with the *appearance* of being impartial and disinterested. *Jackson v. State*, 364 Md. 192, 207, 772 A.2d 273, 281 (2001). Thus, when deciding whether to reopen the State's case-in-chief to receive additional evidence, another safeguard of the defendant's right to answer and receive a fair trial is an impartial and disinterested judge.

We have had occasion to address the trial judge's duty to exhibit impartiality. For example, in *Abdul-Maleek v. State*, we considered whether a trial court impermissibly based a defendant's sentence on the fact that he exercised his right to a trial *de novo*. 426 Md. 59, 43 A.3d 383 (2012). We acknowledged that the trial court relied on several permissible factors in rendering its sentence. *Id*. at 73, 43 A.3d at 391. The trial court also mentioned the defendant's exercise of his right to an appeal *de novo*. *Id*. A majority of this Court determined that, under the circumstances, the trial court did not actually consider the defendant's exercise of the right to appeal to then impose a more severe sentence. *Id*.

16

Yet, the majority was "constrained nonetheless to remand this case for resentencing because the court's explicit reference to Petitioner's exercise of his [right to a] *de novo* appeal could 'lead a reasonable person to infer that [the court] *might* have been motivated' by an impermissible consideration." *Id*. at 74, 43 A.3d at 391 (citing *Jackson*, 364 Md. at 207, 772 A.2d at 281). We explained, "[i]n this circumstance, we are bound to resolve any doubt in [Mr. Abdul-Maleek's] favor." *Id.*

To reach this conclusion, the Court looked to *Jackson*. In *Jackson*, this Court determined that a sentencing judge's comments gave the impression that he imposed a sentence based, at least in part, on consideration of the defendant's place of residence. 364 Md. at 201, 772 A.2d at 278. Recognizing residence as an improper consideration, this Court held that a reasonable person could question the sentencing judge's impartiality. *Id.* at 207, 772 A.2d 281-82.

In *Diggs v. State*, the Court considered whether two defendants were entitled to new trials when the presiding judge acted as a co-prosecutor. 409 Md. at 262-63, 973 A.2d at 797. There, the trial judge questioned witnesses and commented on the trial. *Id*. at 263-83, 973 A.2d at 798-809. In doing so, the trial judge implied a disbelief in the defense, elicited key evidence for the State's case, and, ultimately, bolstered the State's evidence. *Id*. at 293, 973 A.2d at 815. We acknowledged that a trial judge has discretion to question witnesses, but, in exercising that discretion, the trial judge must maintain neutrality. *Id*. at 292-93, 973 A.2d at 814-15. Thus, this Court concluded that the trial judge "crossed the line of propriety," thereby depriving the defendants of fair trials. *Id*. at 293, 973 A.2d at 815.

17

In *Archer v. State*, this Court analyzed the extent to which a trial judge may compel a recalcitrant witness to testify at trial. 383 Md. 329, 335, 859 A.2d 210, 214 (2004). There, the trial court called a colleague to initiate contempt proceedings against a compellable witness. *Id*. at 336, 859 A.2d at 214. The presiding judge threatened the witness with life imprisonment and instructed the witness on how he could testify to avoid contempt proceedings. *Id*. at 349-51, 859 A.2d 223-24. This Court acknowledged that trial judges may warn witnesses of the consequences of contempt proceedings. *Id*. at 350, 859 A.2d at 223. In this instance, however, the trial judge's actions were not judicious or neutral; they were excessive. *Id*. at 336, 859 A.2d at 214. We determined that the trial judge influenced the witness's decision to testify and may have caused the witness to change his testimony. *Id*. at 360, 859 A.2d at 228-29. Accordingly, this Court concluded that the trial judge strayed from his impartial role and impeded the defendant's right to a fair trial. *Id*. at 360, 859 A.2d at 229.

Turning to the matter *sub judice*, we are asked to evaluate the trial judge's impartiality when he or she exercises discretion to allow the State to reopen its case-in-chief after the defense has moved for judgment of acquittal. Although the aforementioned cases are factually distinguishable from the present case, the underlying principle is instructive. Trial judges have an abundance of discretion. Yet, the manner in which a trial judge exercises that discretion must be impartial. To determine whether a judge has abdicated his or her neutrality, in contravention to a criminal defendant's right to a fair trial, we review whether a reasonable person could question the judge's impartiality. *Archer*, 383 Md. at 356-57, 859 A.2d at 227. If a reasonable person could question the

18

trial judge's impartiality, "then the defendant has been deprived of due process and the judge has abused his or her discretion." *Id*. at 357, 859 A.2d at 227.

We recognize at the outset that, here, the trial judge endeavored to provide Mr. Payton and the State a fair trial. Before allowing the reopening of the State's case-in-chief, the judge considered the prejudice to both parties, noting that this case involves "a murder and I think Mr. Payton is – deserves a fair trial and I've tried to do it and the State deserves a fair trial and I'm trying to do that. So I'm trying to balance these competing needs." The irony is that until this point, neither party had reason to complain about the trial's fairness. Only by acting outside the scope of his discretion did the trial judge create the problem raised in this appeal.

Nonetheless, we cannot escape the fact that the trial judge gave consideration to the nature of the charges brought against Mr. Payton in assessing whether to allow the reopening of the State's case. After instructing the State that it could reopen its case, the trial judge stated that "if this were a lesser crime than a murder, I might not be so generous." Two days later, just before Mr. Dorr re-testified, the trial judge reiterated his justification:

> I think I have made clear that if this were a simple drug possession case, I might, in fact, not be allowing this. But this is a murder case. It's an execution-style murder case. I think there is a strong public interest in having definitive resolution of cases involving crimes as serious as this one.

The trial judge's comments indicate that he impermissibly based his decision on the severity of the crimes charged. Neither ruling on a motion for judgment of acquittal nor deciding whether to reopen the State's case requires weighing the nature of the crimes charged. Whether a defendant is charged with murder or "simple drug possession," it is

19

his or her right to have a trial conducted by a judge whose inquiries are dispassionate and neutral. An impartial judge must extract a "definitive resolution" from a cold review of the evidence, not define a proper resolution based on the charges brought. Thus, a reasonable person would be justified in questioning the judge's impartiality in this case.

In deciding whether to allow the State to reopen its case, the trial judge exceeded the bounds of judicial impartiality and essentially acted as a prosecutor. After the defense moved for judgment of acquittal, without articulating a particular basis for the motion, the trial judge interjected his doubt as to the sufficiency of the State's evidence. He questioned the State on the crux of its case – how the fingerprint evidence connected Mr. Payton to the scene of the crime. The State rendered an explanation and replayed portions of Mr. Dorr's testimony for the court. The trial judge continued to express doubt about the State's proof stating, "if I am confused. . . are [the members of the jury] confused? I mean, right now I have to get past this for my own satisfaction to rule in your favor. . . but I'm just totally at sea as to what you have proven in this case."

At this point, the trial judge could have ruled on the motion or sought additional assistance from the parties to understand the evidence. Instead, the trial judge essentially gave the State an ultimatum: recall Mr. Dorr and elicit additional testimony or suffer the consequences of the court ruling on the motion. The trial judge posited, "do I simply grant the motion to dismiss which I could easily do based on what I have heard of this testimony[;]" or "if you want to call [Mr. Dorr] back . . . I am going to permit that." Furthermore, the trial judge advised the State on how it could fill the gap that the trial judge perceived in the case before him. The trial judge stated that the prosecutor "simply didn't

20

ask the punch line question which to me was, is this the print of [Mr. Payton]." In addition, the trial judge specified that the State could recall Mr. Dorr to ask, "in your judgment, to a reasonable degree of certainty, is the print that was taken off of that car Mr. Brandon Payton's print."

Clearly, it was the trial judge's duty to try to understand the evidence that the State had presented and rule on the motion for judgment of acquittal. He had the benefit of Mr. Dorr's initial testimony, portions of which were replayed outside the presence of the jury. In addition, the trial judge had the benefit of the prosecutor's explanation of what the prosecutor believed had been proven. Despite the State's efforts to persuade the judge it had proven its case, the judge was still not convinced.

Nothing happened prior to the State resting its case that prevented the trial judge from taking a recess to review again the evidence in the case and then rule on the motion for judgment of acquittal. Once the State rested, and Respondent moved for judgment of acquittal, the trial judge's responsibility was to rule on the motion. Instead, the court sought further clarification of the evidence before it by permitting the State to recall Mr. Dorr. In doing so, the trial judge provided the State with an unfair opportunity to clarify a gap that the judge perceived in the evidence. Under the circumstances, it was fundamentally unfair to Respondent for the court to permit the State to recall a witness in order to persuade the trial judge and eventually the jury that the evidence in the case was legally sufficient to sustain a conviction. For us to condone such a procedure would result in two grave consequences: 1) there would be no finality when a prosecutor closes his or her case and

21

2) a trial judge would be able to take over the prosecution of a criminal case without violating the defendant's right to a fair and impartial trial.

At worst, the trial judge exhibited bias against Mr. Payton and that was the very reason the State overcame the motion for judgment of acquittal and secured a guilty verdict. At best, the trial judge gave the appearance of helping the State meet its burden of proof and emphasized or highlighted an important aspect of its evidence. In either instance, the trial judge relinquished his role as an impartial and disinterested arbiter when he decided to permit the State to reopen its case instead of ruling on Respondent's motion for judgment of acquittal. *See Brooks v. State*, 299 Md. at 151, 472 A.2d at 984 ("If the trial judge finds that there is no relevant evidence which is legally sufficient to sustain a conviction, he [or she] must grant the motion for judgment of acquittal.").

Petitioner correctly notes that in *Diggs* the judge's improper comments occurred in front of the jury. *See generally Diggs*, 409 Md. 260, 973 A.2d 796. A jury's presence, however, is not dispositive to our analysis of a trial judge's apparent impartiality. *See, e.g.*, *Archer,* 383 Md. 329, 859 A.2d 210 (holding that the trial judge failed to maintain impartiality during a sentencing hearing); *and Jackson*, 364 Md. 192, 772 A.2d 273 (2001) (determining the trial judge failed to maintain impartiality in a sentencing hearing). To hold otherwise would suggest that the defendant's right to a fair trial, and thus an impartial judge, diminishes when the jury leaves the courtroom. To the contrary, this right exists at all stages of a trial. We hold, therefore, that under these circumstances, a reasonable person would be justified in questioning the trial judge's impartiality when he permitted the State

22

to reopen its case to present additional testimony from Mr. Dorr. As such, the trial judge abused his discretion, and Respondent was deprived of his right to a fair trial.

Separate from the trial judge's duty of impartiality, Petitioner and Respondent agree that our decision in *Booze* is instructive on whether the trial judge properly exercised his discretion to reopen the State's case. In *Booze*, the trial judge suggested that the State reopen its case-in-chief. *Id*. 334 Md. 64, 66, 637 A.2d 1214, 1215 (1994). The State sought to elicit testimony from an eyewitness, whose testimony should have been elicited during its case-in-chief. *Id*. at 72-73, 637 A.2d at 1218. The trial court granted the State's request. *Id*. at 73, 637 A.2d at 1219. We reviewed whether the trial court's decision constituted an appropriate exercise of discretion. *Id*. at 66, 637 A.2d at 1215.

We identified a list of factors relevant to determining whether the trial court's decision to allow the State to reopen its case constituted an abuse of discretion. *Booze*, 334 Md. at 76, 637 A.2d at 1220 (citing *State v. Hepple*, 279 Md. at 271, 368 A.2d at 449). The factors serve to weigh any prejudice to the defendant that may come from varying the standard order for the presentation of evidence. *Id.* at 76-77, 637 A.2d at 1220. These factors include "the State's intention in withholding the evidence, *i.e.*, whether it did so in order to gain an unfair advantage from the impact later use of the evidence likely would have on the trier of facts, the nature of the evidence, and its relationship to evidence already in the case." *Id*. at 76, 637 A.2d at 1220. In addition, we consider the effect of the evidence's late admission, and the probability that the trier of fact will give it undue emphasis. *Id*. at 69, 637 A.2d at 1217. These factors focus our review on "[t]he critical

23

issue [which] is whether the reopening of the State's case impaired the ability of the defendant to answer and otherwise receive a fair trial." *Id*. at 76, 637 A.2d at 1220.

In applying these factors, in *Booze*, we determined that the State made an intentional decision to withhold the eyewitness's testimony. *Id.* at 75, 637 A.2d at 1219-20. Accordingly, the Court concluded that the State's decision to withhold testimony did not constitute good cause for reopening the State's case. *Id.* at 77, 637 A.2d at 1220. In addition, the evidence admitted was not rebuttal evidence; instead it was cumulative to and corroborative of evidence that the State had produced in its case-in-chief. *Id.* at 76, 637 A.2d at 1220. The testimony closed a gap in the State's case but came *after* the defense put on its case in response to the State's evidence. *Id*. at 75-76, 637 A.2d at 1219-20. The potential cure in the State's case by way of the eyewitness's testimony was likely given undue emphasis by the jury to the detriment of the defendants. *Id*. at 78-79, 637 A.2d at 1221. We recognized that even though the eyewitness testified on the same day that the State rested its case-in-chief, the State was given an unfair opportunity to piecemeal its case, which, under those circumstances, was "prejudicial as a matter of law." *Id*. at 80-81, A.2d at 1222 (noting that the defendants had defended based on the facts which the State used to prove its case, "but knew, at the time, were not complete," and reopening allowed the State thereafter to offer clarifying evidence). Likewise, even though the trial judge provided an opportunity for the defense to cross-examine the eyewitness,

> the court must also consider whether the prejudicial impact of the admission of the challenged testimony . . . undermine[d] the defendant's right to a fair trial; the fact that the trial court affords a defendant a procedure . . . is of little comfort when the very effect of allowing the evidence is to render the trial unfair.

24

*Id.* at 81, 637 A.2d at 1222-23. We held, therefore, that because of the unfair prejudice to the defendants' right to a fair trial, the trial court abused its discretion when it allowed the State to reopen its case. *Id.* at 66-67, 637 A.2d at 1215.

*Booze* unmistakably reminds us that, when reviewing a trial court's exercise of discretion to reopen the State's case, we must examine the effect the act of reopening had on the entire trial and whether the defendant's right to a fair trial was compromised as a result. Although the factors stated in *Booze* are not exhaustive, they help in weighing the impact that reopening will have on the defendant's right to receive a fair trial. Ultimately, in this case, we must determine whether reopening the State's case was unfairly prejudicial to Respondent.

Applying *Booze*'s teachings to the facts of this case, the trial court's decision to reopen the State's case was unfairly prejudicial. Here, the trial judge had before him Respondent's motion for judgment of acquittal. In accordance with this Court's jurisprudence, the trial judge should have evaluated the legal sufficiency of the State's evidence and then ruled on the motion. *See Brooks v. State*, 299 Md. 146, 151, 472 A.2d 981, 984 (1984) ("If the trial judge finds that there is no relevant evidence which is legally sufficient to sustain a conviction, he [or she] must grant the motion for judgment of acquittal."). Instead, the judge neither granted nor denied the motion; he signaled the reopening of the State's case and allowed the prosecutor to recall Mr. Dorr. Although the trial judge acknowledged that reopening "may very well [cause] some prejudice," he

25

determined that "the public interest [was] sufficiently strong and the possible prejudice [was] sufficiently speculative."

Given that we cannot know how the jury would have understood Mr. Dorr's initial testimony or weighed his credibility, we also cannot know precisely how recalling Mr. Dorr impacted the jury. What is abundantly clear, however, and of particular concern, is that the trial judge's decision gave the State an unfair second chance to present the crux of its case to Respondent's disadvantage. The State purported to use Mr. Dorr's testimony to connect Mr. Payton to the crime scene and eventually to the crimes alleged. At the close of the State's evidence, however, the trial judge was unpersuaded that the State had connected Mr. Payton to the crimes alleged. The judge was on the brink of acquitting Mr. Payton. By reopening the State's case to recall Mr. Dorr, instead of ruling on Respondent's motion, the trial judge permitted the State to present the crux of its case to the jury for a second time. The prejudicial impact of this doubling down on one piece of evidence is exacerbated by the fact that Mr. Dorr's testimony on reopening was elicited two days after the State rested and in isolation to other evidence in the case. Mr. Dorr was the only witness to testify twice, and his testimony was the last evidence the jury heard before convening. Thus, the trial judge's decision to reopen the State's case critically affected Respondent's right to receive a fair trial.

Petitioner contends that Mr. Payton could not be prejudiced by the trial court's decision to permit the State to reopen its case because the trial court misperceived a defect in the prosecutor's case. According to Petitioner, this Court must consider whether the perceived defect constituted an actual defect in the evidence, and the Court of Special

26

Appeals erred in failing to do so. Finally, Petitioner contends that any error under a *Booze* analysis should be subject to harmless error.

We know of no instances when the appellate courts undertake a review of whether "the trial court could have *reasonably* granted [a] motion for judgment of acquittal," as Petitioner urges us to do. Moreover, if the trial court had granted Mr. Payton's motion, its decision to acquit Mr. Payton would have been subject to double jeopardy – regardless of whether the perceived defect was an actual defect. *See Pugh v. State*, 271 Md. 701, 705, 319 A.2d 542, 544 (1974) ("It has always been a settled rule of the common law that after an acquittal of a party upon a regular trial on an indictment for either a felony or a misdemeanor, the verdict of acquittal can never afterward, on the application of the prosecutor . . . be set aside . . . ." (quoting *State v. Shields*, 49 Md. 301, 303 (1878))); *Brooks*, 299 Md. at 150-51, 472 A.2d at 983-84 (explaining that a trial judge granting a motion for judgment of acquittal has the same force and effect as the finder of fact rendering a verdict of not guilty).

With respect to Petitioner's contention that the trial judge's error was harmless beyond a reasonable doubt, we reiterate that the trial judge allowed the State to reopen its case in order to avoid ruling on Mr. Payton's motion for judgment of acquittal. Under these circumstances, the trial judge's decision impaired Mr. Payton's right to a fair trial to such an extent that, as a matter of law, the error was unduly prejudicial. Had the trial judge denied Mr. Payton's motion and sent the case to the jury, the jury may have concluded that the State failed to connect Mr. Payton to the crime with the handprint evidence, just as the trial judge initially concluded before settling on the reopening of the State's case. Thus,

27

the jury may have returned a not guilty verdict. It is also reasonable to conclude that recalling Mr. Dorr bolstered his prior testimony. At a minimum, we know Mr. Dorr's testimony on reopening reemphasized the State's evidence. Where we have determined, as a matter of law, that an error committed by the trial judge is prejudicial, it is unnecessary to invoke a harmless error analysis. *See, e.g.*, *Diggs*, 409 Md. at 294-95, 973 A.2d at 816 (concluding that the trial judge's "egregious and repeated behavior reflecting partiality and bias… denied [the defendants] the right to fair and impartial trials, to which a harmless error review is unavailing."); *Booze*, 334 Md. at 81, 637 A.2d at 1222 (concluding that reopening the State's case to present clarifying evidence was "prejudicial as a matter of law"). Moreover, where a trial judge abdicates his or her responsibilities, thereby causing prejudice to the trial, the abandonment of judicial impartiality undermines the public's trust and confidence in our courts. It casts doubt upon whether, in a particular case, justice has been done. We, therefore, conclude that the trial judge's errors in this case were prejudicial as a matter of law. Accordingly, we affirm the judgment of the Court of Special Appeals.

## CONCLUSION

In conclusion, although trial judges have discretion to allow the State to reopen its case-in-chief, we hold that, in this case, the trial judge abused that discretion. When he allowed the State to reopen its case, the trial judge impermissibly weighed the nature of the charges the State brought against Respondent. In addition, the trial judge exceeded the bounds of judicial impartiality when he, in effect, assumed the role of prosecutor in directing the State to fix a perceived defect in its case. Finally, the trial judge acted in contravention to our caselaw pertaining to reopening the State's case-in-chief when he

28

permitted the State to reopen its case to avoid granting Respondent an acquittal. As a result,

Respondent's right to a fair trial was compromised, and he is entitled to a new trial.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS IN THIS COURT TO BE PAID BY PETITIONER.**